Karie J. Boyd, Esq. / SBN 256840
kb@boydlawapc.com
Thomas D. Georgianna, Esq. / SBN 242115
tg@boydlawapc.com
BOYD LAW APC
2029 Century Park East, Suite 2880
Los Angeles, CA 90067
Telephone: (310) 777-0231
Facsimile: (310) 694-0733
Attorneys for Plaintiff JOHN HACKERT

FILED
CLERK, U.S. DISTRICT COURT
NOV 13 2014
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JOHN HACKERT, an individual,

Plaintiff,

v.

CHARLES BAND, an individual, d/b/a FULL MOON HOLDINGS, d/b/a FULL MOON HOLDINGS, INC., d/b/a FULL MOON FEATURES; FULL MOON HOLDINGS CORP., a California Corporation d/b/a FULL MOON FEATURES, d/b/a CALIFORNIA FULL MOON HOLDINGS, INC., d/b/a FULL MOON HOLDINGS, INC.; and DOES 1 through ~~20~~ 10, inclusive,

Defendants.

CASE NO. CV14-8814 FMO JPRx

**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S EMERGENCY *EX PARTE* APPLICATION RE T.R.O., O.S.C. RE PRELIMINARY INJUNCTION, ETC.**

Complaint Filed:
Date of Hearing:
Time of Hearing:
Location:



# MEMORANDUM

## 1. Introduction

This Court has diversity jurisdiction because this Application involves a dispute between residents of different states; Plaintiff is Domiciled in New York, and Defendants are Domiciled in California. (Hackert Dec., ¶ 1).

Plaintiff John Hackert ("Plaintiff") seeks emergency *ex parte* relief, including a temporary restraining order and other emergency relief to ensure recovery of Plaintiff's $250,000 that Defendant Charles Band ("Band") and Defendant California Full Moon Holdings, Inc. ("FMH," collectively "Defendants") obtained by fraud. In sum, Defendants defrauded Plaintiff of $250,000, refuse to return the $250,000, refuse to account for the $250,000, and are believed to be dissipating the $250,000.

## 2. Statement of Facts Supporting Issuance of T.R.O. And Requested Orders

Defendants are in the business of producing low-budget, horror-themed motion pictures. (Hackert Dec., ¶ 3.) Band, a domiciliary of California, enticed Plaintiff, a domiciliary of New York, to loan him small sums of money on several occasions to finance the production of various movies. (Hackert Dec., ¶¶ 11-15.) In return, Plaintiff received his principal plus an agreed-upon fee and a small percentage of the films' returns. (Hackert Dec., ¶¶ 11, 13)

On June 30, 2010, Band formed FMH Pictures, Inc., an entity created and existing under the laws of California, with himself as Chief Executive Officer, Chief Financial Officer, Secretary, and the sole Director. (Hackert Dec., ¶ 4; Exhibit "15."; RJN Exhibits "1," and "5"). A certificate of amendment of articles of incorporation was filed, changing the name of the company to "Full Moon Holdings Corp." (Hackert Dec., ¶ 6; Exhibit "3." RJN Exhibit "1"). On November 14, 2011, Plaintiff and FMH entered into a contract, providing that Plaintiff loan FMH $50,000 dollars to produce "Zombies vs. Strippers." (Hackert Dec., ¶¶ 16; Exhibit "11.") To induce Plaintiff to sign, Defendants falsely promised 50% of the

film's net revenue until the principal amount was repaid, and then 30% of the film's net revenue for 10 years. (Hackert Dec., ¶ 17; Exhibit "11.") Defendants knowingly made false promises with intent to defraud Plaintiff.

In a letter that both Plaintiff and Band signed, also dated November 14, 2011, Band personally guaranteed the return of Plaintiff's principal loan by December 17, 2012. (Hackert Dec., ¶ 18; Exhibit "12.") By December 17, 2011, Plaintiff made two transfers totaling $50,000 to FMH. (Hackert Dec., ¶ 19; Exhibits "13-14.") However, only $21,000 has been repaid to Plaintiff. (Hackert Dec., ¶ 20.)

On May 3, 2012, Plaintiff and FMH entered into another, separate contract, under which Plaintiff was to loan FMH $200,000 dollars for the production of "Puppet Master 10." (Hackert Dec., ¶ 21; Exhibit "15.") To induce Plaintiff to sign, Defendants falsely promised 50% of the film's net revenue until the principal amount was repaid, and then 50% of the film's net revenue for 10 years. (Exhibit "15.") These promises were false, known to be false when made, and made with the intent of defrauding Plaintiff.

In a letter that both Plaintiff and Band signed, also dated May 3, 2012, Band personally guaranteed the return of Plaintiff's principal loan by December 4, 2013. (Hackert Dec., ¶ 22; Exhibit "16.") By June 4, 2012, Plaintiff made two transfers totaling $200,000 to FMH. (Hackert Dec., ¶ 19; Exhibits "13-14.") However, to date, none of this money has been repaid to Plaintiff. (Hackert Dec., ¶ 23.)

Instead, Plaintiff has made numerous requests for the return of his money and payment of promised returns, but Band and FMH either ignore the requests or provide excuses as to why they cannot do so. (Hackert Dec., ¶ 24; Exhibits "17-19.") Despite Plaintiff's numerous requests, Band and FMH refuse to allow an accountant of Plaintiff's choice to audit FMH's books and records, as their contracts allow. (Hackert Dec., ¶ 25; Exhibits "11, 15.") Defendants refuse to provide detailed records to Plaintiff detailing the costs of the movies, the revenues

the movies generate, the other sources of Defendants' money, or how Plaintiff's investments were used. (Hackert Dec., ¶¶ 26; Exhibits "20-25.")

This matter is extraordinary because Defendants refuse to account for Plaintiff's money, then indicate to Plaintiff an accounting was forthcoming, only to later state that "there are no books or records" and Defendants "have not had an accountant for years." (Hackert Dec., ¶ 30; Exhibit "29.") Defendant's refusal to return or account for Plaintiff's $250,000 is evidence that they have already dissipated, or intend to dissipate, those funds. (Hackert Dec., ¶ 31.) Accordingly, money damages after trial will be an inadequate remedy. Plaintiff will not be able to collect on any judgment if Defendants are allowed to dissipate the $250,000 and make themselves "judgment proof."

**3. The Facts Warrant Issuance of the Requested T.R.O., Expedited Discovery, and an O.S.C. Re Issuance of a Preliminary Injunction**

"Every temporary restraining order issued without notice must . . . state why the order was issued without notice. . . ." (FRCP 65(b)(2).) "[C]ircumstances justifying the issuance of an ex parte order are extremely limited." (*Reno Air Racing Ass'n, Inc. v. McCord,* (9th Cir. 2006) 452 F.3d 1126, 1131.) FRCP 65(b) provides that a court may issue a temporary restraining order without notice to the adverse party or its attorney only if "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and " the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FRCP 65(b)(1); *see also* C.D. Cal. L.R. 7-19.2 ("If the judge to whom the application is made finds that the interest of justice requires that the ex parte application be heard without notice (which in the instance of a TRO means that the requisite showing under FRCP 65(b) has been made), the judge may waive the notice requirement of L.R. 7-19.1.)

Under California Code of Civil Procedure sections 526.010(a)(1)-(a)(3) and

California Civil Code section 3439.07(3) respectively, injunctive relief and temporary restraining orders are appropriate where, (a) based on the complaint, the plaintiff is entitled to injunctive relief: (1) where irreparable injury is threatened; (2) where one party is violating the rights of another with respect to the subject of the action and tending to render a judgment; (3) when pecuniary compensation would not afford adequate relief ; or (4) where a fraudulent transfer occurred.

Like FRCP § 65, California Code of Civil Procedure section 527(c)(1) authorizes that a temporary restraining order may issue where irreparable injury will result before the matter can be heard after formal notice. Here, the facts (i.e., Defendants' ongoing attempts to keep information from Plaintiff; see Hackert Dec. ¶ 20-33) warrant the issuance of a TRO without notice. (Hackert Dec., ¶ 28).

**A. Plaintiff Is Likely to Succeed on the Merits**

The legal standard applicable to applications for temporary restraining orders and preliminary injunctions are the same in this Circuit. To obtain a preliminary injunction, the moving party must show either: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." (*Walczak v. EPL Prolong, Inc.* (9th Cir. 1999) 198 F.3d 725, 731.) These are not two separate tests; they represent "extremes of a singular continuum." *Id.* As set forth above and below, plaintiff's facts meet this standard.

At the outset, FMH is a suspended company. (RJN Exhibit "2"). As such, it may not defend this action. (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306). Thus Plaintiff will succeed against FMH as a matter of law. (*Id.*).

i. **Breach of Contract**

Under California law, the elements of breach of contract are (1) plaintiff and defendant entered into a contract; (2) plaintiff did all, or substantially all, of the significant things that the contract required, or plaintiff was excused from doing those things; (3) defendant failed to perform requirements of the contract;

and (4) plaintiff was harmed by defendant's failure to perform. (*Acoustics, Inc. v. Trepte Construction Co,* (1971) 14 Cal.App.3d 887, 913.)

Plaintiff and FMH entered into contracts on November 14, 2011 and May 3, 2012, which required Plaintiff to lend money to FMH as an investment. (Hackert Dec., ¶¶ 16, 21; Exhibits "11, 15.") The contracts called for Plaintiff to loan Defendants a total of $250,000, and Plaintiff fulfilled his contractual obligations by lending $250,000 to Defendants. (Hackert Dec., ¶ 19, 23; Exhibits "13, 14.") Defendants promised, and Band personally guaranteed, to repay the principal amount of money borrowed, plus a percentage of revenue. (Exhibits "8, 14.") Defendants have returned only $21,000 to Plaintiff. (Hackert Dec., ¶ 20.) Defendants' breaches of the contracts and personal guarantees, have damaged Plaintiff in the amount of $250,000, plus promised returns.

ii. **Money Had and Received**

A plaintiff may plead the cause of action of money had and received when the "plaintiff has lent money to the defendant, the defendant received plaintiff's money, the money was intended to be used for the benefit of the plaintiff, [the] money was not used for the plaintiff's benefit, and defendant has not returned the money to the plaintiff. (*Avidor v. Sutter's Place, Inc.* (2013) 212 Cal.App.4th 1439, 1454.)

Band and FMH became indebted to Plaintiff for the sum of $250,000 when Plaintiff lent Defendants $50,000, and subsequently $200,000 (Hackert Dec., ¶¶ 19, 23). The money was intended as an investment for the benefit of Plaintiff, but Defendants did not use the money for its intended purpose. (Hackert Dec. ¶ 25). Instead, Defendants' failure to account for, or return Plaintiff's money, is circumstantial evidence that Defendant's have squandered the money for their own purposes. (Hackert Dec., ¶¶ 27-32; Exhibits "26-29.")

Hence, Plaintiff has been damaged in the amount of $250,000. Plaintiff has also suffered consequential and incidental damages arising out of the efforts to

collect the debt from Defendants, as well as the opportunities lost from the inability to use and invest money that should have been repaid to Plaintiff.

iii. **Fraud**

Under California Civil Code section 3294(c)(3), the elements of fraud are (1) defendant made a material misrepresentation; (2) the misrepresentation was known by Defendant to be false at the time it was made; (3) defendant had intent to induce reliance; (4) plaintiff's reliance was reasonable; and (5) plaintiff's reliance caused actual harm.

Defendants misrepresented, in writing, the identity of the contracting parties when they entered into contracts with Plaintiff, by forming the contracts between Plaintiff and "Full Moon Holdings, Inc." thereby misrepresenting to Plaintiff that he was dealing with a corporation. (Exhibits "5, 9, 11, 15," RJN Exhibits "1-7"). Defendants also misrepresented to Plaintiff that if Plaintiff loaned a total of $250,000 to Defendants, Defendants would invest the money to generate guaranteed returns for Plaintiff and that he could have his own accountant examine the books. (Hackert Dec., ¶¶ 16, 21; Exhibits "11, 15.") Defendants knowingly made these false statements because (1) Defendants knew that the company "Full Moon Holdings, Inc." with Band as President, did not exist since a person would know if they were the President of a corporation, and there is no evidence from the Secretary of State of California that the company does exist; (2) Defendants never intended to return the money to Plaintiff, as evidenced by the constant delays and lack of accounting; and (3) Defendants never intended to let Plaintiff examine the books as evidenced by the conflicting information about preparation of books and records by a "veteran" of the industry, and their existence because they had not had an accountant for years. (Hackert Dec., ¶ 30; Exhibit "29.") Defendant Band personally guaranteed the investments in order to induce Plaintiff to make the investments. (Hackert Dec., ¶¶ 18, 22; Exhibits "12, 16.") Plaintiff reasonably relied on Defendants' misrepresentations because of Band's personal guarantees.

(Hackert Dec., ¶ 34, 35). Because Plaintiff relied on Defendants' misrepresentations, Plaintiff has been harmed in the amount of $250,000 plus incidental and consequential damages. (Hackert Dec., ¶¶ "36-37.")

iv. **Conversion**

Under California law, the elements of conversion are that (1) plaintiff has a right to the converted property; (2) defendant has asserted a wrongful dominion over the property inconsistent with plaintiff's right; and (3) damage. (*Igauye v. Howard* (1952) 114 Cal.App.2d 122, 126-127.)

Per the contract and personal guarantee dated 11/14/2011, Plaintiff has ownership and the right to possession and use of his $50,000, and to its immediate return as of December 17, 2012. (Hackert Dec., ¶¶ 16-17; Exhibits "11-12.") Per the contract and personal guarantee dated 5/3/20112, Plaintiff has ownership and the right to possession and use of his $200,000, and to its immediate return as of December 4, 2013. (Hackert Dec., ¶ 21-22; Exhibit "15-16.") Defendants acquired the funds through misrepresentation, and have not returned the funds belonging to Plaintiff. (Hackert Dec., ¶¶ 19-20; Exhibit "14.") Defendants' refusal to return the funds was, and is, a substantial factor in causing Plaintiff's harm in the amount of $250,000, plus all consequential and incidental damages.

v. **Fraudulent Conveyance**

"A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the with actual intent to hinder, delay, or defraud any creditor of the debtor." (Cal. Civ. Code § 3439.04(a).)

Because Plaintiff made loans to FMH, signed for by Band as President of FMH, Plaintiff is a creditor of FMH, the debtor. (Cal. Civ. Code §§3439.04(c),(e).) FMH then transferred the money to Band and Does 1-20, and repeatedly refused to show Plaintiff accounting statements or records, in an intentional effort to hinder, delay, or prevent Plaintiff from being able to reach all or a portion of his money. (§

3439.04(a)(1).) In addition, FMH made the transfers without an exchange of adequate consideration or a legitimate business purpose since Band claims the films did not generate sufficient revenue. (§ 3439.04(a)(2).) At the time of the transfers, FMH was or was about to be engaged in a business or transaction for which its assets were unreasonably small in relation the business or transaction since they consistently claim that they are low on funds. (§ 3439.04(a)(2)(A); RJN Exhibits “8, 9”). In addition FMH intended, believed, or should have believed that it would incur debts beyond its ability to pay as they came due since it continues to make films while claiming there is no money to pay debts. (§ 3439.04(a)(2)(B) ; RJN Exhibits “8, 9”). As a result, FMH should be liable to Plaintiff for fraudulent conveyances.

However, FMH is the alter ego of Band because there is no separate personality that distinguishes FMH from Band. The “Alter Ego” doctrine requires a unity of interest, with factors including employment of same employees (i.e., RJN Exhibit “5”), commingling of funds (Hackert Dec., Exhibits “12, 16”), same office or business location (RJN Exhibit “5”), concealment or misrepresentation of responsible ownership, management, financial interest, and personal business activities (RJN Exhibit “1-7;” Hackert Dec., Exhibit “11, 15”), and the use of a corporation as subterfuge for illegal transactions (*Id.*). (*Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1358.) The doctrine requires that the result of transactions of interest be inequitable if treated as those of the corporation alone. (*Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 836-837.)

Band has attempted to dodge liability by using FMH to acquire the loan from Plaintiff. Since FMH fraudulently conveyed the loan funds lent to it by Plaintiff, Band attempts to place sole liability on the company. Yet holding FMH solely responsible would be an inequitable result because “Full Moon Holdings, Inc.” does not exist as a corporation since the Secretary of State of California has

no record of its existence. Band has simply been doing business as "Full Moon Holdings, Inc.", in violation of California Business and Professions Code section 17910.5, which provides that a person may not use an identifier in a company name if that identifies the company as a business entity registered with the Secretary of State. Therefore, since the company is not a separate entity, the company is not only the alter ego of Band, the company is Band, and Band should be held responsible for Plaintiff's damages.

vi. **Plaintiff Will Be Irreparably Injured if Defendants Dissipate the $250,000.00; Money Damages Will Be an Inadequate Remedy Because Defendants Are Insolvent, and Dissipating and Secreting Assets to Avoid Judgment**

As of October 2002, Band has repeatedly avoided meeting with Plaintiff to discuss details of the loans and his plans for repayment. (Hackert Dec., Exhibits "26-31.") Band has steadily refused to give Plaintiff information requested concerning financial statements, sources of financing, accounting records, and money owed to Plaintiff. (*Id.*). If Band dissipates the $250,000, Plaintiff will have nothing for which to satisfy his judgment against Defendants. Moreover, Band's refusal to account for or return Plaintiff's $250,000 is circumstantial evidence that he is dissipating the money, and direct evidence that he is secreting the money.

**B. The Balance of Hardships Tips in Plaintiff's Favor**

Plaintiff seeks only to freeze $250,000 of Band's and FMH's assets. As Band controls the $250,000, and it rightfully belongs to Plaintiff, Band will suffer no prejudice if $250,000 of his assets are frozen. On the other hand, if Band is allowed to dissipate the $250,000, making himself "judgment proof," Plaintiff will suffer irreparable injury.

**C. An Order Allowing Expedited Discovery Is Warranted**

An order for expedited discovery prior to the FRCP 26(f) conference is warranted under FRCP 26(d) because evidence showing the location of the

$250,000 will be irrelevant if Defendants are allowed to dissipate the funds. Plaintiff would like to identify what account(s) contain any portion of the $250,000 so that Plaintiff may serve those institutions with any temporary restraining order or order for injunctive relief barring dissipation of those funds.

**D. Plaintiff is prepared to Post Bond**

Plaintiff has not posted bond, but is able and willing, in the amount set by this Court.

**4. Conclusion**

Assuming Band and the other defendants have not absconded with Plaintiff's $250,000, the relief Plaintiff now seeks from this Court is Plaintiff's only true hope of recovering his money. Once Defendants failed to perform any of the promises or return Plaintiff's money after Plaintiff's demand, there is no reason why Defendants should be entitled to the use of Plaintiff's money.

Accordingly, for the foregoing reasons, the Court should grant Plaintiff's *Ex Parte* Application and issue the Temporary Restraining Order freezing Defendants' assets and compelling them to account for Plaintiff's $250,000, the Order to Show Cause Why a Preliminary Injunction should not issue, and the Order authorizing early discovery so Plaintiff can attempt to trace where the money went, etc.

Dated: November 12, 2014

BOYD LAW APC

By: ______________________

Karie J. Boyd
Thomas D. Georgianna
Attorneys for Plaintiff,
JOHN HACKERT