1  Karie J. Boyd, Esq. / SBN 256840
2  Thomas D. Georgianna, Esq. / SBN 242115
   BOYD LAW APC
3  2029 Century Park East, Suite 2880
   Los Angeles, CA  90067
4  Telephone:  (310) 777-0231
   Facsimile:  (310) 694-0733

5
   Attorneys for Plaintiff,
6  JOHN HACKERT

7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10
                                    CV14-8814 FMO   JPRx
11 JOHN HACKERT, an individual,     CASE NO.

12              Plaintiff,

13 v.

14 CHARLES BAND, an individual, d/b/a    DECLARATION OF JOHN
   FULL MOON HOLDINGS, d/b/a FULL       HACKERT
15 MOON HOLDINGS, INC., d/b/a FULL
   MOON FEATURES; FULL MOON
16 HOLDINGS CORP., a California
   Corporation d/b/a FULL MOON
17 FEATURES, d/b/a CALIFORNIA FULL
   MOON HOLDINGS, INC., d/b/a FULL
18 MOON HOLDINGS, INC.; and DOES 1
   through 20, inclusive,
19                  10
                Defendants.
20                                   Complaint Filed:

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

                DECLARATION OF JOHN HACKERT

1    I, John A. Hackert, hereby declare, pursuant to 28 U.S.C. § 1746 as follows:

2    I make this declaration as to facts within my own personal knowledge, and if

3    called as a witness, I could and would competently testify thereto.

4        1.    I am a U.S. citizen and am domiciled in the state of New York.

5    Defendant Charles Band is a domiciliary of California, and Full Moon Holdings

6    Corp. is a Caifornia corporation.

7        2.    In the fall of 2005, I became an acquaintance of Charles Band

8    ("Band") at one of his fundraising roadshows.

9        3.    Band and and his "Full Moon" companies are in the business of

10   producing low-budget, horror-themed motion pictures. A true and accurate copy of

11   the Statement of Information, filed on July 19, 2010 by Charles Band in his

12   capacity as President of the company, from California's Secretary of State of the

13   State, is attached hereto as **Exhibit "1"**, and incorporated by reference.  (See also

14   concurrently filed Request for Judicial Notice).

15       4.    Band was the Chief Executive Officer, Chief Financial Officer,

16   Secretary, and sole Director of FMH Pictures, Inc., ("FMHP"). *See* **Exhibit "1"**

17       5.    FMHP was created in California on June 30, 2010 as "FMH Pictures,

18   Inc." A true and accurate copy of the Articles of Incorporation, from California's

19   Secretary of State of the State, is attached hereto as **Exhibit "2"**, and incorporated

20   by reference.  (See also concurrently filed Request for Judicial Notice).

21       6.    The name "FMH Pictures, Inc." was later changed to "Full Moon

22   Holdings Corp." ("FMHC").  A true and accurate copy of the Certificate of

23   Amendment of Articles of Incorporation of FMH Pictures, Inc., filed by Charles

24   Band in his capacity as President and Secretary of the company, is attached hereto

25   as **Exhibit "3"**, and incorporated by reference.  (See also concurrently filed

26   Request for Judicial Notice).

27       7.    FMHC is the registered owner of the fictitious business name "Full

28   Moon Features" ("FMF"). A true and accurate copy of Fictitious Business Name

1  Statement, filed with the Los Angeles County Clerk, by Charles Band in his
2  capacity as President of the company, is attached hereto as **Exhibit "4"**, and
3  incorporated by reference.  (See also concurrently filed Request for Judicial
4  Notice).

5        8.    Band also does business under the name Full Moon Holdings, Inc.
6  ("FMHI"). A true and accurate copy of the Promissory Note referencing the loan
7  terms of the contract between FMHI and me, dated May 23, 2011, signed by
8  Charles Band in his capacity as President of the company, and personally, is
9  attached hereto as **Exhibit "5"**, and incorporated by reference.

10        9.    After searching States' records, I could find no record of incorporation
11  for any companies by the name of "Full Moon Holdings, Inc."

12        10.    FMHI is yet another ficititious business name for FMHC; FMHI also
13  does business as Full Moon Features. A true and accurate certified copy of the
14  Application for Copyright Registration of the work entitled Gingerdead Man 3:
15  Saturday Night Cleaver, dated March 27, 2011, showing the copyright claimant as
16  "Full Moon Holdings, Inc. d/b/a Full Moon Features," and signed by, and addressed
17  to, Band in care of Full Moon Features, is attached hereto as **Exhibit "6"**, and
18  incorporated by reference.  A true and accurate certified copy of the Certificate of
19  Registration for the same work, dated April 13, 2011, showing the copyright
20  claimant as Full Moon Holdings, Inc. d/b/a Full Moon Features, with Bands name
21  in the area marked "Certification," and addressed to Band in care of Full Moon
22  Features, is attached hereto as **Exhibit "7"**, and incorporated by reference. Going
23  forward, I'll refer to Full Moon Holdings, Inc., Full Moon Holdings Corp., Full
24  Moon Holdings, Full Moon Features, and Full Moon collectively as "FMH".

25        11.    Between September 2006 and April 2011, I loaned Band and FMH
26  small amounts of money for the production of "Petrified," "Gingerdead Man 2,"
27  and "Evil Bong 3D." Though I do not have contracts for these transactions, I
28  received repayment of the principal in full, plus a percentage of the films' returns.

12.     On May 23, 2011, I loaned $10,000 to Band and FMH for the production of "Killer Eye 2," "Halloween Haunt," "Unlucky Charms," and "The Dead Want Women" and was to receive repayment of the sum of $10,000, plus interest at the rate of 2% per annum. *See*  **Exhibit "5"**.

13.     Band, as President of FMH, also agreed to pay a $2,000 "production consultancy fee" by May 23, 2012. I received repayment of principal, plus interest, and a consulting fee. A true and accurate copy of the letter of confirmation referencing the consultancy fee terms, also dated May 23, 2011, signed by Charles Band in his capacity as President of the company, and by me, is attached hereto as **Exhibit "8"**, and incorporated by reference.

14.     On October 11, 2011, I loaned an additional $10,000 to Band and FMH for the production of "The Dead Want Women," at 2% interest, payable by July 12, 2012. This loan was secured with a Promissory Note also dated October 11, 2011. A true and accurate copy of the Promissory Note referencing the loan terms, October 11, 2011, signed by Charles Band in his capacity as President of the company, and personally, is attached hereto as **Exhibit "9"**, and incorporated by reference.

15.     Band agreed to pay me a $3,000 "consulting fee" for "The Dead Want Women" by July 12, 2012. I received repayment in full, a percentage of the film's revenue, and the consulting fee. A true and accurate copy of the letter of confirmation referencing the consultancy fee terms, also dated October 11, 2011, signed by Charles Band in his capacity as President of the company, and by me, is attached hereto as **Exhibit "10"**, and incorporated by reference.

16.     On November 14, 2011, I entered into a contract with Band and FMH, which provided that I loan FMH $50,000 for the production of "Zombies vs. Strippers." A true and accurate copy of the referenced contract, dated November 14, 2011, signed by Charles Band in his capacity as President of the company, and by me, is attached hereto as **Exhibit "11"**, and incorporated by reference.

17.    In return for the loan, FMH promised to pay me 50% of the film's net revenue until the principal amount was repaid, and then 30% of the film's net revenue for 10 years. *See* **Exhibit "11"**.

18.    In a letter signed by Band and me, also dated November 14, 2011, Band personally guaranteed the return of the loan principal by December 17, 2012. A true and accurate copy of the referenced letter of Personal Guarantee of Charles Band, dated November 14, 2011, signed by Charles Band in his capacity as President of the company, and by me, is attached hereto as **Exhibit "12"**, and incorporated by reference.

19.    By December 17, 2011, I made the second of two transfers totaling $50,000 to FMH. While I do not have bank statements showing the transfers of funds from my account to the account owned by FMH, I do have information regarding Defendants' routing and account numbers, which were given to me so that I could transfer the referenced funds. A true and accurate copy of the bank account information, showing where to send the referenced funds from my bank account to a bank account owned by FMH, is attached hereto as **Exhibit "13"**, and incorporated by reference. A true and accurate copy of a letter from Band to me, dated June 10, 2014, confirming my loan investment in 5 films  and Defendants' failure to repay me since Band confirms his personal responsibility for the money that I put into the production of those movies, is attached hereto as **Exhibit "14"**, and incorporated by reference.

20.    I have only received $21,000 in repayment of that loan.

21.    On May 3, 2012, I entered into another, separate contract with FMH, under which I was to loan FMH $200,000 dollars for the production of "Puppet Master 10." FMH promised to pay me 50% of the film's net revenue until the principal amount was repaid, and then 50% of the film's net revenue for 10 years. A true and accurate copy of the referenced contract, dated May 3, 2012, signed by Charles Band in his capacity as President of the company, and by me, is attached

1  hereto as **Exhibit "15"**, and incorporated by reference.

2      22.    In a letter signed by Band and me, also dated 5/32012, Band

3  personally guaranteed the return of the loan principal by 12/4/2013. A true and

4  accurate copy of the referenced letter of Personal Guarantee of Charles Band, dated

5  May 3, 2012, signed by Charles Band in his capacity as President of the company,

6  and by me, is attached hereto as **Exhibit "16"**, and incorporated by reference.

7      23.    By 6/42012, I transferred $200,000 to FMH. None has been repaid.

8      24.    I have made numerous requests for the return of my money and the

9  payment of the promised returns, but Band and FMH either ignore my requests or

10  provide excuses as to why they cannot do so. True and accurate copies of the emails

11  containing Defendants' responses to my request for payment of some of the money

12  owed to me by Defendants, dated, 12/18/2013, 4/26/2013, and 8/16/2013,  are

13  attached hereto as **Exhibits "17-19"** respectively, and incorporated by reference.

14      25.    Even though the contracts give me the right to have an accountant of

15  my choice audit FMH's books and records, Band and FMH refuse to give me

16  access. *See* **Exhibits 11 and 15**.  This suggests they have embezzled my funds.

17      26.    The statements Defendants gave to me are not detailed financial

18  statements, and do not list sources of money for production costs or how my money

19  was used. True and accurate copies of the statements sent from Defendants to me,

20  for "Killer Eye 2," for periods ending 8/15/2012 and 11/15/2012, are attached

21  hereto as **Exhibits "20-21"** respectively, and incorporated by reference. True and

22  accurate copies of the statements sent from Defendants to me, for "Dead Want

23  Women," for periods ending 8/15/2012 and 11/15/2012, are attached hereto as

24  **Exhibits "22-23"** respectively, and incorporated by reference. A true and accurate

25  copy of the statement sent from Defendants to me, for "Puppet Master X: Axis

26  Rising," for period ending 12/31/2012, is attached hereto as **Exhibit "24"**, and

27  incorporated by reference. A true and accurate copy of the statement sent from

28  Defendants to me, for "Zombies vs. Strippers," for period ending 12/31/2012, is

1   attached hereto as **Exhibit "25"**, and incorporated by reference.

2          27.    When I ask how they continue to make movies without money, Band

3   gives vague explanations. A true and accurate copy of an email sent from Band to

4   me, dated 12/19/2012, is attached as **Exhibit 26**, and incorporated by reference.

5          28.    Defendants do keep accurate records of their finances; in an Email

6   from Band to me, he claims a veteran of the business helps Defendants prepare

7   quarterly statements. A true and accurate copy of the referenced email sent from

8   Band to me, dated 12/3/2012, indicates that a "qualified" person helps to prepare

9   their financial statements, is attached hereto as **Exhibit "27"**, and incorporated by

10  reference.  Because of Defendants efforts to mislead me and conceal my funds from

11  me, this ex parte application for a temporary restraining order must be issued ex

12  parte.  Otherwise, based on their past track record, they will secret assets and

13  destroy evidence.

14         29.    In an email sent to me from Band, dated 5/8/2013, Band indicated that

15  he was having someone prepare his books, which I had asked for the previous year.

16  A true and accurate copy of the referenced email discussing the accountings, is

17  attached hereto as **Exhibit "28"**, and incorporated by reference.

18         30.    In an email from Band to me, dated 12/20/2013, Band claims "there

19  are no books or records" and Defendants "have not had an accountant for years." A

20  true and accurate copy of the referenced email sent from Band to me, which

21  contradicts previous communications concerning financial statements and records,

22  is attached hereto as **Exhibit "29"**, and incorporated by reference.

23         31.    Because Band and FMH refuse to return my money or give me a

24  detailed accounting of how the $250,000 was invested, I have reason to believe the

25  money is gone and that Defendants have or will destroy evidence of where it is.

26         32.    Almost every month from September 2012 through December 2013, I

27  made a request for either the return of my money, information about how my

28  money was invested or a meeting or conference call to discuss any or all of those

1  matters, and my requests are almost always refused, which tells me that Band and

2  FMH do not have the funds with which to pay me back.  A true and accurate copy

3  an August 27, 2013 email sent from Band to me, which Defendants promised to

4  send me a check (but never did), is attached hereto as **Exhibit "30"**, and

5  incorporated by reference.  A true and accurate copy of  an August 15, 2013 email

6  sent from Band to me, which says that money is coming in and that I should wait

7  patiently for it, is attached hereto as **Exhibit "31"**, and incorporated by reference.

8       33.    Because Band and his companies have been sued many times,

9  resulting in judgments for the plaintiffs, and at least two judgment were renewed, I

10  believe he has no tintention of paying back the loans.  A true and accurate copy fo

11  the notice of renewal of judgment entered in *First Charter Bank, N.A. v. Amazing*

12  *Fantasy Entertainment, Inc.* (Californai Superior Court, Case No.: BC242458), in

13  which Band is a judgment debtor, is attached hereto as **Exhibit "32"**, and

14  incorporated by reference.  (See also concurrently filed Request for Judicial

15  Notice).  A true and accurate copy of  the judgment entered in *James R. Moder*

16  *Motion Picture Distribution v. Charles Band* (California Superior Court, Case No.:

17  BC232808) is attached hereto as **Exhibit "33"**, and incorporated by reference.  (See

18  also concurrently filed Request for Judicial Notice).

19       34.    I reasonably relied on Band's personal guarantee of the loans because

20  Defendants repaid the first several loans according to our agreement.

21       35.    I would have never made the loans without his personal guarantee of

22  repayment of the loan principal.

23       36.    Because of Band and FMH's refusal to abide by the contracts, I have

24  been denied the use of my $250,000, plus the percentage of revenue promised.

25  Band has paid nothing on the May 3, 2012, $200,000.00 investment contract, and

26  only $21,000.00 on the November 14, 2011, $50,000.00 investment contract.

27       37.    Because of Band's refusal to abide by his personal guarantees, I have

28  been denied the use of my $250,000.

1    38.    I have personally conducted an investigation into the finances of

2  defendants, and believed that Defendants are doing business with: Redbox

3  Automated Retail, LLC; Roku, Inc.; Microsoft, Inc.; Apple, Inc.; Paramount

4  Pictures Corporation; and CitiBank, N.A.

5    39.    The foregoing statements were made upon my personal knowledge,

6  except as to those matters stated upon information and belief, after I conducted a

7  reasonable investigation into those matters.

8    I declare, under penalty of perjury, that the foregoing is true and correct.

9

10

11  Executed on Nov 12th 2014, at 5:90 eastern time

12

13  By: _____

14       John A. Hackert

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "1"**



**State of California**
**Secretary of State**



**E-B36484**

**FILED**

In the office of the Secretary of
State of the State of California

**Jul - 19 2010**

This Space For Filing Use Only

**STATEMENT OF INFORMATION**
(Domestic Stock and Agricultural Cooperative Corporations)

FEES (Filing and Disclosure): $25.00.  If amendment, see instructions.
**IMPORTANT - READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

| 1. CORPORATE NAME (Please do not alter if name is preprinted.) | | | | S |
|---|---|---|---|---|
| C3299592 FMH PICTURES, INC. | | | | |

**DUE DATE:**

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 2 and 3 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 2. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | | |
| 1626 N. WILCOX AVE., SUITE 474   HOLLYWOOD  CA  90028 | | | | |
| 3. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | CITY | STATE | ZIP CODE |
| 1626 N. WILCOX AVE., SUITE 474   HOLLYWOOD  CA 90028 | | | | |
| 4. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 2 | | CITY | STATE | ZIP CODE |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 5. CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| CHARLES   BAND  1626 N. WILCOX AVE., SUITE 474   HOLLYWOOD, CA 90028 | | | | |
| 6. SECRETARY/ | ADDRESS | CITY | STATE | ZIP CODE |
| CHARLES   BAND  1626 N. WILCOX AVE., SUITE 474   HOLLYWOOD  CA 90028 | | | | |
| 7. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
| CHARLES   BAND  1626 N. WILCOX AVE., SUITE 474   HOLLYWOOD  CA 90028 | | | | |

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director.  Attach additional pages, if necessary.)

| 8. NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| CHARLES  BAND    1626 N. WILCOX AVE., SUITE 474   HOLLYWOOD  CA 90028 | | | | |
| 9. NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 10. NAME | ADDRESS | CITY | STATE | ZIP CODE |

11. NUMBER OF VACANCIES ON THE BOARD OF DIRECTIONS, IF ANY:

**AGENT FOR  SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California street address (a P.O.Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 13 must be left blank.)

| 12. NAME OF AGENT FOR SERVICE OF PROCESS | | | | |
|---|---|---|---|---|
| MICHAEL  WOLF, ESQ. | | | | |

| 13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 11400 WEST OLYMPIC BLVD.  9TH FLOOR  LOS ANGELES, CA 90064 | | | |

**TYPE OF BUSINESS**

14. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
MOTION PICTURE PRODUCTION

15. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 07/19/2010 | CHARLES  BAND | PRESIDENT | |
|---|---|---|---|
| DATE | TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | TITLE | SIGNATURE |

| SI-200 C (REV 01/2008) | APPROVED BY SECRETARY OF STATE |
|---|---|

EXHIBIT "2"

3299592

FILED
in the office of the Secretary of State
of the State of California

JUN 3 0 2010

## ARTICLES OF INCORPORATION

### OF

### FMH PICTURES, INC.

#### I

The name of this corporation is:

FMH Pictures, Inc.

#### II

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business, or the practice of a profession permitted to be incorporated by the California Corporations Code.

#### III

The name and address in the State of California of this corporation's initial agent for service of process is:

Michael Wolf, Esq.
11400 West Olympic Boulevard, 9th Floor
Los Angeles, California  90064

#### IV

This corporation is authorized to issue only one class of shares of stock, and the total number of shares which this corporation is authorized to issue is 1,000,000 shares.

V

The liability of the directors of this corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

VI

This corporation is authorized to provide indemnification of agents (as defined in Section 317 of the California Corporations Code) for breach of duty to this corporation and its stockholders through bylaw provisions or through agreements with the agents, or both, in excess of the indemnification otherwise permitted by Section 317 of the California Corporations Code, subject to the limits on such excess indemnification set forth in Section 204 of the California Corporations Code.

IN WITNESS WHEREOF, the undersigned incorporator has executed the foregoing Articles of Incorporation.

_____
Joseph A. Petro, Incorporator

I:\17022\400\Formation\Articles of Incorporation.wpd

EXHIBIT "3"

329959∂                A0705826

CERTIFICATE OF AMENDMENT OF

ARTICLES OF INCORPORATION

OF

FMH PICTURES, INC.

FILED
In the Office of the Secretary of State
of the State of California

AUG 1 1 2010

The undersigned certifies that:

1.   He is the President and the Secretary of FMH Pictures, Inc., a California
     corporation.

2.   Article I of the Articles of Incorporation of this corporation is amended to read
     as follows:

     The name of the corporation is Full Moon Holdings Corp.

3.   The foregoing amendment of Articles of Incorporation has been duly approved
     by the board of directors.

4.   The foregoing amendment of Articles of Incorporation has been duly approved
     by the required vote of shareholders in accordance with Section 902, California
     Corporations Code.  The total number of outstanding shares of the corporation
     is 1,000.  The number of shares voting in favor of the amendment equaled or
     exceeded the vote required.  The percentage vote required was more than 50%.

We further declare under penalty of perjury under the laws of the State of
California that the matters set forth in this certificate are true and correct of our
own knowledge.

DATE: June ____; 2010
      Aug 10th

                                        Charles Band, President

                                        Charles Band, Secretary

I:\17022\400\Formation\Cert of Amend Articles.wpd

**EXHIBIT "4"**

This page is part of your document - DO NOT DISCARD

## 20110296124



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/24/11 AT 01:40PM**

| | |
|---|---|
| FEES: | 26.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 26.00 |



**L E A D S H E E T**



201102240480013

00003804417

003180485

**SEQ:**
**02**

DAR - Mail (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

MAILING ADDRESS

...OLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP, C/O MATTHEW WOLF

...RESS: 11400 W. OLYMPIC BLVD., 9TH FLOOR

CITY: LOS ANGELES          STATE: CA          ZIP CODE: 90064



02/24/2011          Y CLERK

*20110296124*

# FICTITIOUS BUSINESS NAME STATEMENT

TYPE OF FILING AND FILING FEE (Check one)

☑ Original- $26.00 (FOR ORIGINAL FILING WITH ONE BUSINESS NAME ON STATEMENT)   ☐ New Filings- $26.00 (CHANGES IN FACTS FROM ORIGINAL FILING- REQUIRES PUBLICATION)
☐ Refile- $26.00 (NO CHANGES IN THE FACTS FROM ORIGINAL FILING)
$5.00 - FOR EACH ADDITIONAL BUSINESS NAME FILED ON SAME STATEMENT, DOING BUSINESS AT THE SAME LOCATION  $6.00 - FOR EACH ADDITIONAL OWNER IN EXCESS OF ONE OWNER

### The following person(s) is (are) doing business as:

* 1.  FULL MOON FEATURES          2.

_____   _____
                                    Print Fictitous Business Name(s)

** 1626 N. WILCOX AVE., SUITE 474

Street address of principal place of business          Mailing address if different

HOLLYWOOD          CA          90028          LOS ANGELES
City                State        Zip           COUNTY          City          State          Zip

Articles of Incorporation or Organization Number (if applicable): AI #/ON  C3289592 - A0705826

*** REGISTERED OWNER(S):

1. FULL MOON HOLDINGS CORP.          2.
   Full Name/Corp/LLC (P.O. Box not accepted)          Full Name/Corp/LLC (P.O. Box not accepted)
   1626 N. WILCOX AVE., SUITE 474
   Residence Address                                   Residence Address
   HOLLYWOOD          CA          90028
   City                State        Zip               City          State          Zip
   CALIFORNIA
   If Corporation or LLC – Print State of Incorporation/Organization   If Corporation or LLC – Print State of Incorporation/Organization

3.                                                    4.
   Full Name/Corp/LLC (P.O. Box not accepted)          Full Name/Corp/LLC (P.O. Box not accepted)
   Residence Address                                   Residence Address
   City                State        Zip               City          State          Zip
   If Corporation or LLC – Print State of Incorporation/Organization   If Corporation or LLC – Print State of Incorporation/Organization

IF MORE THAN FOUR REGISTRANTS, ATTACH ADDITIONAL SHEET SHOWING OWNER INFORMATION

**** THIS BUSINESS IS CONDUCTED BY: (Check one)
   ☐ an Individual          ☐ a General Partnership          ☐ a Limited Partnership          ☐ a Limited Liability Company
   ☐ an Unincorporated Association other than a Partnership          ☑ a Corporation          ☐ a Trust          ☐ Copartners
   ☐ Husband and Wife          ☐ Joint Venture          ☐ State or Local Registered Domestic Partners          ☐ a Limited Liability Partnership

***** The registrant commenced to transact business under the fictitious business name or names listed above on 07/01/2010
                                                                                    (Insert N/A above if you haven't started to transact business)

### I declare that all information in this statement is true and correct.
(A registrant who declares as true information which he or she knows to be false is guilty of a crime.)

REGISTRANT/CORP/LLC NAME (PRINT)  FULL MOON HOLDINGS CORP.          TITLE  PRESIDENT

REGISTRANT SIGNATURE  _____          IF CORP OR LLC, PRINT NAME  CHARLES BAND

**If corporation, also print corporate title of officer. If LLC, also print title of officer or manager.**
This statement was filed with the County Clerk of LOS ANGELES on the date indicated by the filed stamp in the upper right corner.
NOTICE – IN ACCORDANCE WITH SUBDIVISION (a) OF SECTION 17920, A FICTITIOUS NAME STATEMENT GENERALLY EXPIRES AT THE END OF FIVE YEARS FROM THE DATE ON
WHICH IT WAS FILED IN THE OFFICE OF THE COUNTY CLERK, EXCEPT, AS PROVIDED IN SUBDIVISION (b) OF SECTION 17920, WHERE IT EXPIRES 40 DAYS AFTER ANY CHANGE
IN THE FACTS SET FORTH IN THE STATEMENT PURSUANT TO SECTION 17913 OTHER THAN A CHANGE IN THE RESIDENCE ADDRESS
OF A REGISTERED OWNER. A NEW FICTITIOUS BUSINESS NAME STATEMENT MUST BE FILED BEFORE THE EXPIRATION.

THE FILING OF THIS STATEMENT DOES NOT OF ITSELF AUTHORIZE THE USE IN THIS STATE OF A FICTITIOUS BUSINESS NAME IN VIOLATION OF THE RIGHTS OF ANOTHER
UNDER FEDERAL, STATE, OR COMMON LAW (SEE SECTION 14411 ET SEQ., BUSINESS AND PROFESSIONS CODE).
*I HEREBY CERTIFY THAT THIS COPY IS A CORRECT COPY OF THE ORIGINAL STATEMENT ON FILE IN MY OFFICE.*

*DEAN C. LOGAN, LOS ANGELES COUNTY CLERK*          BY: _____, Deputy

Rev. 09/2010          P.O. BOX 1208, NORWALK, CA 90651-1208          PH: (562) 462-2177          WEB ADDRESS: LAVOTE.NET

This page is part of your document - DO NOT DISCARD



# 20110487693



**Pages:**
**0002**

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**04/01/11 AT 11:07AM**

| | | |
|---|---|---|
| FEES: | | 0.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 0.00 |



LEADSHEET



201104010490003

00003976798

003242514

**SEQ:**
**10**

DAR - Counter (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



.ATION OF PUBLICATION



2

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

ATTN MATTHEW E WOLF ESQ

WOLF RIFKIN SHAPIRO
SCHULMAN & RABKIN LLP
11400 W OLYMPIC BLVD 9TH FLR
LOS ANGELES CA 90064-1557

PROCESS & PUB-FICTITIOUS NAME
FULL MOON FEATURES
20110296124

The undersigned says:

I am over the age of 18 years and a citizen of the
United States. I am not a party to and have no interest in
this matter. I am a principal clerk of the LOS ANGELES
BULLETIN®, a newspaper of general circulation in the
City of Los Angeles, the Judicial District of Los Angeles,
the County of Los Angeles, and the State of California, as
adjudicated in Los Angeles Superior Court Case No.
BS014387. The notice, a printed copy of which appears
hereon, was published on the following date(s): Mar
3,10,17,24, 2011

I declare under penalty of perjury that the foregoing is
true and correct. Executed at Los Angeles, California on
03/24/11.

_____
signature

**Los Angeles Bulletin**
P.O. Box 60859
Los Angeles, Ca 90060

*Phone: (213) 346-0033*
*Fax: (213) 687-3886*

Cust. Num.: 003377
Cust. Ref. Num.: 17022-404          Control Num.: 851465

---

File No. 20110296124
FICTITIOUS BUSINESS
NAME STATEMENT
The following person(s) is (are) doing
business as FULL MOON FEATURES,
1626 N Wilcox Ave., Suite 474, Holly-
wood, CA 90028, COUNTY Los Angeles
Articles of Incorporation or Organiza-
tion  Number  AI  #ON  C3296592  -
A0705626
REGISTERED OWNER(S)
Full Moon Holdings Corp , California,
1626 N Wilcox Ave , Suite 474, Holly-
wood, CA 90028
This business is conducted by a
corporation
The registrant commenced to trans-
act business under the fictitious business
name or names listed above on July 01,
2010
I declare that all information in this
statement is true and correct (A registrant
who declares as true information which he
or she knows to be false is guilty of a
crime)
REGISTRANTS/CORP/LLC  NAME
(PRINT  FULL  MOON  HOLDINGS
CORP , TITLE President
REGISTRANT  SIGNATURE  Charles
Band
If corporation, also print corporate
title of officer If LLC, also print title of
officer or manager
This statement was filed with the
County Clerk of Los Angeles County on
February 24, 2011
NOTICE - In accordance with subdi-
vision (a) of Section 17920, a Fictitious
Name Statement generally expires at the
end of five years from the date on which it
was filed in the Office of the County Clerk
Except, as provided in subdivision (b) of
Section 17920, where it expires 40 days
after any change in the facts set forth in
the statement pursuant to Section 17913
other than a change in the residence
address of a registered owner A New
Fictitious Business Name Statement must
be filed before the expiration
The filing of this statement does not
of itself authorize the use in this state of a
Fictitious Business Name in violation of
the rights of another under Federal, State,
or Common Law (See Section 14411 et
seq ) Business and Professions Code)
I hereby certify that this copy is a
correct copy of the original statement on
file in my office
DEAN  C  LOGAN,  LOS  ANGELES
COUNTY CLERK
BY: Deputy
Original
CN851465 17022-404 Mar 3,10,17,24,
2011

---

EXHIBIT "5"

# Promissory Note

$10,000.00

May 23, 2011
Los Angeles, California

FOR VALUE RECEIVED, Full Moon Holdings, Inc & Charles Band individually (hereinafter referred to as "Debtors") do herby promise to pay to ____ John Hackert ____ (hereinafter referred to as "Creditor"), the sum of Ten Thousand Dollars ($10,000.00), together with interest thereon, at the rate of two percent (2%) per annum, on or before May 23, 2012.

This Note may be assigned by Creditor to any third party upon notice to Debtor. If legal action shall be instituted on this Note, debtor does hereby promise to pay such sums as the court may fix as litigation costs, including but not limited to reasonable attorneys' fees.

Executed at Los Angeles, California.

X _____
Full Moon Holdings, Inc.
Charles Band President

X _____
Charles Band

EXHIBIT "6"



*LIBRARY OF CONGRESS*

*Copyright Office*
*of the United States*

*WASHINGTON, D.C.*

**THIS IS TO CERTIFY** that the attached photocopies are a true representation of the Application for Copyright Registration of the work entitled **GINGERDEAD MAN 3: SATURDAY NIGHT CLEAVER**. The application was received in the Copyright Office April 13, 2011 and was assigned the service request number 1-599948721

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on June 9, 2014.

Maria A. Pallante
Register of Copyrights

By:     Jarletta Walls
Supervisory Copyright Specialist
Records Research and Certification Section
Office of Public Records and Repositories

Use of this material is governed by the U.S. copyright law 17 U.S.C. 101 et seq.

**Form PA**
For a Work of Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

LC COPYRIGHT



0 032 314 904 5

|  | PA | PAU |

EFFECTIVE DATE OF REGISTRATION

| Month | Day | Year |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**
Gingerdead Man 3: Saturday Night Cleaver

**PREVIOUS OR ALTERNATIVE TITLES ▼**
N/A

**NATURE OF THIS WORK ▼** See Instructions
Motion Picture

## 2

**NAME OF AUTHOR ▼**
Full Moon Holdings, Inc. d/b/a Full Moon Features

**DATES OF BIRTH AND DEATH**
Year Born ▼       Year Died ▼
N/A

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of _____
{ Domiciled in USA

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Motion Picture

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼       Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of _____
{ Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼       Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of _____
{ Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
2011 Year
This information must be given in all cases.

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month _____ Day _____ Year _____

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Full Moon Holdings, Inc. d/b/a Full Moon Features
1626 N. Wilcox Ave. #474
Hollywood, CA 90028

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE
OFFICE USE ONLY

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**MORE ON BACK ▶**
• Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.
• Sign the form at line 8.

DO NOT WRITE
Page 1 of

EXAMINED BY           FOR

CHECKED BY

☐ CORRESPONDENCE
    Yes

Fl
COPY
OFl
U
Ol

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.)▼ If your answer is No, do not check box A, B, or C.

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼      **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

N/A

a

See inst
before c
this spac

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼          **Account Number** ▼

N/A

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip▼

Charles Band c/o Full Moon
1626 N. Wilcox Ave. #474
Hollywood, CA  90028

Area code and daytime telephone number    ( 323 )   822-2100      Fax number   ( 213 ) 627-4615

Email cband@fullmoonfeatures.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Charles Band                            Date 3/17/11

Handwritten signature (X) ▼

X _____

| Certificate will be mailed in window envelope to this address: | **Name** ▼ |
| --- | --- |
| | Charles Band c/o Full Moon |
| | **Number/Street/Apt** ▼ |
| | 1626 N. Wilcox Ave. #474 |
| | **City/State/Zip** ▼ |
| | Hollywood, CA  90028 |

**YOU MUST**
· Complete all necessary spaces
· Sign your application in space 8

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO**
Library of Congress
Copyright Office-PAD
101 Independence Avenue SE
Washington, DC 20559-6230

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form PA—Full   Rev: 02/2009   Print  06/2010—50,000   Printed on recycled paper             U.S. Government Printing Office 2010-357-4

EXHIBIT "7"



*LIBRARY OF CONGRESS*

*Copyright Office*
*of the United States*

*WASHINGTON, D.C.*

**THIS IS TO CERTIFY** that on April 13, 2011 a claim to copyright a work identified as **GINGERDEAD MAN 3: SATURDAY NIGHT CLEAVER** was registered under **PAu 3-603-796.** This work was registered in accordance with provisions of the United States Copyright Law (Title 17 United States Code).

**THIS IS TO CERTIFY FURTHER**, that the attached is an additional certificate of this work.

**IN WITNESS WHEREOF** the seal of this Office is affixed hereto on April 25, 2014.

Maria A. Pallante
Register of Copyrights

*Veronica Patten.*

By:     Veronica Patten
Supervisory Copyright Specialist
Records Research and Certification Section
Office of Public Records and Repositories

Use of this material is governed by the U.S. copyright law 17 U.S.C. 101 et seq.



# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PAu 3-603-796

**Effective date of
registration:**

April 13, 2011

## Title

**Title of Work:** Gingerdead Man 3: Saturday Night Cleaver

**Nature of Work:** Motion Picture

## Completion/Publication

**Year of Completion:** 2011

## Author

■ **Author:** Full Moon Holdings, Inc. d/b/a Full Moon Features

**Author Created:** Motion Picture

**Work made for hire:** No

**Domiciled in:** United States

**Anonymous:** No                          **Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** Full Moon Holdings, Inc. d/b/a Full Moon Features

1626 N. Wilcox Ave. #474, Hollywood, CA, 90028

## Limitation of copyright claim

**Previously registered:** No

## Certification

**Name:** Charles Band

**Date:** March 17, 2011

Page 1 of 1

EXHIBIT "8"



**Full Moon Holdings, Inc.**
1626 N. Wilcox Ave. | Suite 474 | Los Angeles | CA | 90028
PHONE | 323-822-2100 | FAX | 213-627-4615 |
www.fullmoondirect.com | ry@fullmoonfeatures.com

To:   John Hackert
      345 Mariaville Road
      Schenectady, NY 12306

May 23rd, 2011

This letter will confirm that in return for your consultancy services on 3 Full Moon productions (entitled: KILLER EYE 2: HALLOWEEN HAUNT, UNLUCKY CHARMS, THE DEAD WANT WOMEN), you will receive a $2,000.00 production consultancy fee paid on or before May 23rd, 2012.

If the above reflects the terms of our understanding please sign below.

Very best,

X _____        X _____
Full Moon Holdings, Inc.            Charles Band President
Charles Band President

Agreed and Accepted

X _____ 5/25/2011

EXHIBIT "9"

# Promissory Note

$10,000.00

Oct 11th, 2011
Los Angeles, California

      FOR VALUE RECEIVED, Full Moon Holdings, Inc & Charles Band individually (hereinafter referred to as "Debtors") do herby promise to pay to ___John Hackert___ (hereinafter referred to as "Creditor"), the sum of ____TEN____ Thousand Dollars ($10,000.00), together with interest thereon, at the rate of two percent (2%) per annum, on or before July 12th, 2012.

This Note may be assigned by Creditor to any third party upon notice to Debtor. If legal action shall be instituted on this Note, debtor does hereby promise to pay such sums as the court may fix as litigation costs, including but not limited to reasonable attorneys' fees.

Executed at Los Angeles, California.

X _____
Full Moon Holdings, Inc.
Charles Band President

X _____
Charles Band

EXHIBIT "10"



**Full Moon Holdings, Inc.**
1626 N. Wilcox Ave. | Suite 474 | Los Angeles | CA | 90028
PHONE | 323-822-2100 | FAX | 213-627-4615 |
www.fullmoondirect.com | ry@fullmoonfeatures.com

To:   John Hackert
      345 Mariaville Road
      Schenectady, NY 12306

Oct 11th, 2011

This letter will confirm that in return for your consultancy services on an upcoming Full
Moon production (THE DEAD WANT WOMEN), you will receive a $3000.00 production
consultancy fee paid on or before July 12th, 2012.

If the above reflects the terms of our understanding please sign below.

Very best,

X _____        X _____
Full Moon Holdings, Inc.
Charles Band President               Charles Band President

Agreed and Accepted,

X _____

10 - 17 - 2011

**EXHIBIT "11"**

# INVESTMENT AGREEMENT

## *"ZOMBIES VS. STRIPPERS"*

Dated: As of November __14__, 2011

**This Investment Agreement** (this "**Agreement**") is entered into by and between **FULL MOON HOLDINGS, INC.** (the "**Company**") and **JOHN HACKERT** ("**John**") in connection with the feature length motion picture to be produced from the screenplay currently entitled *Zombies vs. Strippers* (the "**Picture**"). For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.       **Investment**. John shall contribute the sum of Fifty Thousand Dollars ($50,000) (the "**Investment Amount**") for use by the Company in connection with the production, post-production, sales, marketing and distribution of the Picture. The Investment Amount shall be paid to the Company by John as follows:

      (a)      $25,000 shall be contributed on or before November 14, 2011; and

      (b)      the remaining $25,000 shall be contributed on or before December 17, 2011.

The Company shall be entitled to utilize the Investment Amount as it is contributed to the Company.

2.       **Production**. The Company agrees that it shall develop, produce and complete the Picture substantially in accordance with the approved Budget no later than ~~March 3b~~, 2012 2012 (the "**Delivery Date**").

3.       **Return on Investment**. As consideration for the contribution of the Investment Amount, John shall be entitled to receive the following:

      (a)      Fifty percent (50%) of Net Revenues received by the Company from the exploitation of the Picture, until such time as John has received the return of the entire amount of the Investment Amount.

      (b)      Thereafter, thirty percent (30%) of all Net Revenues received by the Company from the exploitation of the Picture for a period of ten (10) years commencing on the date of first public exhibition of the Picture (the "**Term**").

      (c)      For purposes hereof, "Net Revenues" shall mean all amounts actually received by the Company from the exploitation of the Picture, less returns and credits, and less costs of exhibition, distribution, sales, prints and advertising. Notwithstanding the foregoing, it is agreed that the Company shall not charge any distribution or sales fees in connection with the exploitation of the Picture.



       (f)    John has adequate means of providing for his current financial needs and contingencies, is able to bear the substantial economic risks of this investment for an indefinite period of time, has no need for liquidity in this investment, and, at the present time, could afford a complete loss of this investment.

       (g)    John has such knowledge and experience in financial, tax and business matters so as to enable him to evaluate the merits and risks of this investment and to make an informed investment decision with respect thereto.

7.    **Indemnification by the Company**. The Company shall indemnify, save and hold harmless John from and against any claims, demands, causes of action, obligations, liability, loss, damage, cost and expenses (including reasonable attorneys' fees), incurred or sustained by reason of or arising out of or in connection with the development, production and/or exploitation of the Picture.

8.    **Miscellaneous**.

       (a)    This Agreement may not be modified except by written agreement signed by each of the parties hereto.

       (b)    No waiver by one party of a breach or default by the other party shall be deemed to be a waiver of any preceding, continuing or succeeding breach of the same or any other provision of this Agreement.

       (c)    This Agreement has been entered into in the State of California and shall be construed and enforced under and subject to the laws of said state.

       (d)    Should there be any dispute between the parties concerning the interpretation of this Agreement or concerning an alleged breach of this Agreement, which the parties are unable to resolve after consultation with each other, such dispute shall be decided by arbitration pursuant to the regulations and procedures of the American Arbitration Association. The parties agree that any award rendered by the American Arbitration Association may be entered in the appropriate state or federal court located within the state of California.

9.    **Notices**.  All notices shall be in writing and shall be sent to the parties at the following addresses:

If to the Company:                    If to John:

Full Moon Holdings, Inc.           John Hackert
c/o Charlie Band                 345 Mariaville Road
1626 N. Wilcox Ave., Suite 474     Schenectady, NY 12306
Hollywood, CA 90028



4.    **Accounting and Audits**.  Within forty-five (45) days following the end of each calendar quarter during the first two (2) years of the Term, and within forty-five (45) days following the end of each year during the remainder of the Term, Company shall provide John with a written statement of all Net Revenues earned by the Company during such period, together with a check for any amounts owed to John in connection therewith.  Not more than once during any twelve (12) month period, a certified public accountant on John's behalf and at John's expense may audit Company's books and records in respect to Net Revenues for the purpose of determining the accuracy of the statements rendered by Company hereunder.  All such audits shall be made during regular business hours upon not less than thirty (30) days' prior written notice to Company, and shall occur at Company's regular place of business where such books and records are maintained.  Company's books and records may be examined as aforesaid only within one (1) year after the date rendered, and Company shall not have any obligation to permit John to examine Company's books and records relating to any particular accounting period more than once.  The rights granted in this paragraph shall constitute John's sole and exclusive right to examine Company's books and records.

5.    **Credits**.  John shall be entitled to receive an on-screen credit as a Co-Producer of the Picture, with the size, position and other aspects of such credit to be determined by the Company.  John shall also be entitled to appear in a cameo role in the Picture, to be determined by the Company, and shall receive on-screen credit in connection therewith.

6.    **Representations and Warranties**.  John hereby represents, warrants and covenants to the Company that:

(a)    John is has the power and all necessary rights and resources to enter into and perform this Agreement and the transactions contemplated herein.

(b)    This Agreement constitutes John's legal, valid and binding obligation.

(c)    The entry into and performance of this Agreement and the transactions contemplated thereby do not and will not conflict with: (i) any existing law or regulation or any official or judicial order, or (ii) any agreement or document to which John is a party or which is binding upon him or any of his assets.

(d)    The Company has not made any oral or written representations other than those stated in this Agreement.

(e)    John is not contributing the Investment Amount as result of or subsequent to any advertisement, article, notice, other communication published in any newspaper, magazine, or similar media or broadcast over television or radio or the Internet, or presented at any seminar or meeting, or any solicitation by a person other than a representative of the Company.



10.     **Counterparts**.  This Agreement may be executed in counterparts.  For purposes of this Agreement, facsimile signatures or signatures sent by email in a pdf format shall be treated as original signatures.

WHEREFORE, the parties have executed this Agreement on the date first above written.

"John"

John Hackert

("the Company")

Full Moon Holdings, Inc.

By:

Charles Band, President



EXHIBIT "12"

**Regarding the financing agreement for ZOMBIES VS STRIPPERS**
**Personal Guarantee of Charles Band**

$50,000.00

Nov 14th, 2011
Los Angeles, California

Dear John Hackert,
This letter will confirm that if you have not received your full investment back within 12 calendar months from the date of your second payment of $25,000 (for a total investment of $50,000) that I will personally pay to you whatever shortfall may occur. For clarity, if you have only collected a total of $40,000 12 months after your investment, then I will pay to you the difference of $10,000.

Please confirm that this reflects your understanding by signing below.

Very best,
CB

Executed at Los Angeles, California.

X _____
Full Moon Holdings, Inc.
Charles Band President

X _____
Charles Band

Agreed and accepted
_____
John Hackert

**EXHIBIT "13"**

Also, below is the banking info for the wire transfer:

Routing/ABA: 322271724
Account Number: 203813548
Name: Full Moon Holdings, Inc
Address: 1626 Wilcox Ave Apt 474 Los Angeles CA 90026
Bank Name: Citibank
Bank Address: 324 E 1st St Los Angeles CA 90012
Bank Phone Number: 213.687.0782

EXHIBIT "14"



**CHARLES BAND**
**Full Moon Holdings**
1626 N. Wilcox Ave| Suite 474 | Hollywood| CA | 90028
T| 323-822-2100 | F | 213-627-4615
E| cband@fullmoonfeatures.com | W | fullmoondirect.com

June 10th, 2014

Dear John,

   This letter will confirm that the 5 films you had an investment in have not recouped their costs of production. The model we have all relied on for years has basically disappeared as the physical world of DVDs and DVD rentals has come to an end. Most of our revenues for the last 25+ years has come from rental chains like Blockbuster, Hollywood Video, The Wherehouse, Tower Records etc - and they are all now out of business. Unfortunately this painful transition is still going on as even sell-thru DVDs are discounted to a level where only pennies make it back to the production companies. All of this is very similar to what happened some years ago to the music industry.

   I regret that the business took such a drastic turn and we got caught in the transition period. This has been an extremely difficult period for Full Moon and all similar independents that relied for years on the home video rental business.

   I do want to confirm again that I am personally responsible for the monies you put into these productions and will in time find ways to pay you back.

   The new model for making feature films successfully is to spend 20-25% of what we spent on the last group of 5 as the market has shrunk that drastically.  In that regard I'll be sending you some ideas on how we can work together on a new group of films made in that much smaller budget range.

Thanks for all of your patience John.

Best,

Charles Band

EXHIBIT "15"

## INVESTMENT AGREEMENT

### *"Puppet Master 10: Axis Rising"*

Dated: As of May __3rd__, 2012

**This Investment Agreement** (this "**Agreement**") is entered into by and between **FULL MOON HOLDINGS, INC.** (the "**Company**") and **JOHN HACKERT** ("**John**") in connection with the feature length motion picture to be produced from the screenplay currently entitled *Puppet Master 10: Axis Rising* (the "**Picture**").  For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    **Investment**. John shall contribute the sum of Two Hundred Thousand Dollars ($200,000) (the "**Investment Amount**") for use by the Company in connection with the production, post-production, sales, marketing and distribution of the Picture.  The Investment Amount shall be paid to the Company by John as follows:

　　　(a)    $100,000 shall be contributed on or before May 14, 2012; and

　　　(b)    the remaining $100,000 shall be contributed on or before June 4, 2012.

The Company shall be entitled to utilize the Investment Amount as it is contributed to the Company.

2.    **Production**.  The Company agrees that it shall develop, produce and complete the Picture substantially in accordance with the approved Budget no later than ____September_____, 2012 (the "**Delivery Date**").

3.    **Return on Investment**.  As consideration for the contribution of the Investment Amount, John shall be entitled to receive the following:

　　　(a)    Fifty percent (50%) of Net Revenues received by the Company from the exploitation of the Picture, until such time as John has received the return of the entire amount of the Investment Amount.

　　　(b)    Thereafter, fifty percent (50%) of all Net Revenues received by the Company from the exploitation of the Picture for a period of ten (10) years commencing on the date of first public exhibition of the Picture (the "**Term**").

　　　(c)    For purposes hereof, "Net Revenues" shall mean all amounts actually received by the Company from the exploitation of the Picture, less returns and credits, and less costs of exhibition, distribution, sales, prints and advertising.  Notwithstanding the foregoing, it is agreed that the Company shall not charge any distribution or sales fees in connection with the exploitation of the Picture.

**4.      Accounting and Audits**.  Within forty-five (45) days following the end of each calendar quarter during the first two (2) years of the Term, and within forty-five (45) days following the end of each year during the remainder of the Term, Company shall provide John with a written statement of all Net Revenues earned by the Company during such period, together with a check for any amounts owed to John in connection therewith.  Not more than once during any twelve (12) month period, a certified public accountant on John's behalf and at John's expense may audit Company's books and records in respect to Net Revenues for the purpose of determining the accuracy of the statements rendered by Company hereunder.  All such audits shall be made during regular business hours upon not less than thirty (30) days' prior written notice to Company, and shall occur at Company's regular place of business where such books and records are maintained.  Company's books and records may be examined as aforesaid only within one (1) year after the date rendered, and Company shall not have any obligation to permit John to examine Company's books and records relating to any particular accounting period more than once.  The rights granted in this paragraph shall constitute John's sole and exclusive right to examine Company's books and records.

**5.      Credits**.  John shall be entitled to receive an on-screen credit as a Co-Producer of the Picture, with the size, position and other aspects of such credit to be determined by the Company.  John shall also be entitled to appear in a cameo role in the Picture, to be determined by the Company, and shall receive on-screen credit in connection therewith.

**6.      Representations and Warranties**.  John hereby represents, warrants and covenants to the Company that:

(a)      John is has the power and all necessary rights and resources to enter into and perform this Agreement and the transactions contemplated herein.

(b)      This Agreement constitutes John's legal, valid and binding obligation.

(c)      The entry into and performance of this Agreement and the transactions contemplated thereby do not and will not conflict with: (i) any existing law or regulation or any official or judicial order, or (ii) any agreement or document to which John is a party or which is binding upon him or any of his assets.

(d)      The Company has not made any oral or written representations other than those stated in this Agreement.

(e)      John is not contributing the Investment Amount as result of or subsequent to any advertisement, article, notice, other communication published in any newspaper, magazine, or similar media or broadcast over television or radio or the Internet, or presented at any seminar or meeting, or any solicitation by a person other than a representative of the Company.

(f)      John has adequate means of providing for his current financial needs and contingencies, is able to bear the substantial economic risks of this investment for an

indefinite period of time, has no need for liquidity in this investment, and, at the present time, could afford a complete loss of this investment.

(g)     John has such knowledge and experience in financial, tax and business matters so as to enable him to evaluate the merits and risks of this investment and to make an informed investment decision with respect thereto.

7.      **Indemnification by the Company**. The Company shall indemnify, save and hold harmless John from and against any claims, demands, causes of action, obligations, liability, loss, damage, cost and expenses (including reasonable attorneys' fees), incurred or sustained by reason of or arising out of or in connection with the development, production and/or exploitation of the Picture.

8.      **Miscellaneous**.

(a)     This Agreement may not be modified except by written agreement signed by each of the parties hereto.

(b)     No waiver by one party of a breach or default by the other party shall be deemed to be a waiver of any preceding, continuing or succeeding breach of the same or any other provision of this Agreement.

(c)     This Agreement has been entered into in the State of California and shall be construed and enforced under and subject to the laws of said state.

(d)     Should there be any dispute between the parties concerning the interpretation of this Agreement or concerning an alleged breach of this Agreement, which the parties are unable to resolve after consultation with each other, such dispute shall be decided by arbitration pursuant to the regulations and procedures of the American Arbitration Association. The parties agree that any award rendered by the American Arbitration Association may be entered in the appropriate state or federal court located within the state of California.

9.      **Notices**.  All notices shall be in writing and shall be sent to the parties at the following addresses:

If to the Company:                          If to John:

Full Moon Holdings, Inc.                    John Hackert
c/o Charlie Band                            345 Mariaville Road
1626 N. Wilcox Ave., Suite 474              Schenectady, NY 12306
Hollywood, CA 90028

842491.1

10.   **Counterparts**.  This Agreement may be executed in counterparts.  For purposes of this Agreement, facsimile signatures or signatures sent by email in a pdf format shall be treated as original signatures.

WHEREFORE, the parties have executed this Agreement on the date first above written.

"John"

John Hackert                          5-7-2012

("the Company")

Full Moon Holdings, Inc.

By: _____
         Charles Band, President

- 4 -

842491.1

EXHIBIT "16"

**Regarding the financing agreement for Puppet Master 10: Axis Rising**
**Personal Guarantee of Charles Band**

$200,000.00                                          May 3rd, 2011
                                                     Los Angeles, California

Dear John Hackert,
This letter will confirm that if you have not received your full investment back
within 18 calendar months from the date of your second payment of $100,000 (for
a total investment of $200,000) that I will personally pay to you whatever shortfall
may occur. For clarity, if you have only collected a total of $160,000 within 18
months after your investment, then I will pay to you the difference of $40,000.

Please confirm that this reflects your understanding by signing below.

Very best,
CB

                              Executed at Los Angeles, California.

                    X _____
                       Full Moon Holdings, Inc.
                       Charles Band President


                    X _____
                       Charles Band


Agreed and accepted
_____
John Hackert

EXHIBIT "17"

| Subj: | **RE: dec18th 2013** |
|---|---|
| Date: | 12/18/2013 1:07:08 P.M. Eastern Standard Time |
| From: | cband@fullmoonfeatures.com |
| To: | Devlinmayham@aol.com |

For sure John
Just need to get out of this hole
Please be patient – this will all work out


**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Wednesday, December 18, 2013 9:56 AM
**To:** cband@fullmoonfeatures.com
**Subject:** dec18th 2013

QUESTION– *ARE YOU EVER GOING TO PAY ME ALL MY MONEY?*

EXHIBIT "18"

**Subj:** RE: hello
**Date:** 4/26/2013 4:22:08 P.M. Eastern Daylight Time
**From:** cband@fullmoonfeatures.com
**To:** Devlinmayham@aol.com

John -- I'm doing the best that I can -- this is a very difficult business.

We're 100% on for 10:00am Thursday May 2nd

**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Friday, April 26, 2013 1:06 PM
**To:** cband@fullmoonfeatures.com
**Subject:** Re: hello

charlie we need talk this cant keep going on like this, i know you do the accounting with nakia and i know you get reports i have friend s to and i have talked to people i also know you take all the money put in to one pot, C harlie did i do some thing to you on personal level or pro level cause every thing you said it been here say i never seen any thing that's in writing shows the studio is in trouble or your not getting paid i was looking for ward toward that April 29th dat , plus thing really gets me you gave me your word on this and i did nt even charge you interest or late fee, any one else charlie they nail your balls to wall. C harlie next week may 2nd is good please will you talk to if i have fly out there agin not going be happy camper i went with you as a man of your word and you gave me your word promise , if there ver was a problem with terms of contract or any thing in regard to what we work on you take care of it , charlie i went with you to make money and the truth many feel and iam starting think you not being on the level with some stuff iam upset but very sad , i really feel let down and i really want to do more films with you and start a new company, how can i do that if we have money issues and the truth about in formation money. CHarlie here is my take on all this you say you dont get paid have all these problems , but you do movies have new products start new web site traveral to con ventions ,and then your responds is you take out loans borrow money charlie dont add up do you think iam stupit or dumb hey i might be italian germ jew or as people say a mutt , but when it comes to business money iam a pig for money and well icant say in busines , iam not nice, 10 yrs ago if all this was happening we wouldn't be have this talk. S O i will extend you the rspect as a business partner and i hope as a friend wait till may 2nd to talk with you and take that check put it in the bank and i wont go evil on you lol , that's joke. IAM SORRY FOR THIS EMAIL BUT PLEAS TRY UNDERSTAND CHARLIE NO MORE THIS HAS TO STOP OR CHANGE EVERY ONE FROM MY LAWYER TO ACCOUNTS AND OTHER EVEN THOSE FRINDS THAT ARE IN THE BUSINESS SAY YOUR NOT BEING STRAIGHT WITH ME , HEY IF IAM WRONG I WILL PERSONALLY SAY IAM SORRY WAS WRONG BUT IF IAM RIGHT IT BETTER GET FIXED , cause a lot of stuff can happen that is postive , imean wouldn't you want start up new business from bottom up we do it different. I am sorry for long email bottom line you have claim 3 to 5 revenue sources and your not being paid plus you told me Friday you brought the account in which make it 17 days. One thing i wish you let me done is do the book keeping then i could be out there work with you but you said no , so that tells me some thing. I GOING OUT TO DINNER I BE GONE . dated 4/26/2013 2:24:03 P.M. Eastern Daylight Time, cband@fullmoonfeatures.com writes:

> Hi John
> Unfortunately there is a small delay in some money I am personally owed that was to have been received today.
>
> I should be getting the wire now on Thursday next week (May 2nd) . Pleaser wait until then to deposit the 2nd of the 3 postdated checks I gave you.
>
> I'll call or email you Thursday morning to confirm you can put it through.
>
> Sorry for this delay – nothing seems to be so easy these days.
>
> We should also talk next week – how about the same day? 10:00 Thursday May 2nd?
> Thanks for understanding
> CB
>
> **From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]

Tuesday, December 17, 2013 AOL: Devlin mayham

EXHIBIT "19"

Subj:     **Fwd: hey**
Date:     12/17/2013 10:22:07 P.M. Eastern Standard Time
From:     Devlinmayham@aol.com
To:       devlinmayham@aol.com

john a hackert

From: Devlinmayham@aol.com
To: ry@fullmoonfeatures.com
Sent: 8/16/2013 10:39:34 A.M. Eastern Standard Time
Subj: Re: hey

i hope good news. thank you

In a message dated 8/15/2013 4:18:36 P.M. Eastern Daylight Time, ry@fullmoonfeatures.com writes:

I just got word that we may not have the funds to send out the check until early next week. I know the check was supposed to be sent on Wednesday the 14th. We're doing our best. Charlie has spent half his time this week trying to collect money from those that owe us. Please allow a delay of a few business days for checks to clear. I'll have a more solid answer tomorrow morning.

**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Thursday, August 15, 2013 12:32 PM
**To:** ry@fullmoonfeatures.com
**Subject:** hey

ry is there going be issues with anything ? check should be here no later then friday., but in truth it should of been here on aug 15 th its every 14 days. ok thank you

Thursday, December 19, 2013 AOL: Devlin mayham

**EXHIBIT "20"**

**KILLER EYE 2**
Royalty Statement

Statement #1
For Period ending:  8/15/12

| | | |
|---|---|---|
| Production Costs | $ (72,111.00) | |
| | | $ (72,111.00) |
| Distribution Costs* | | |
| RedBox | $ (9,675.00) | |
| SQS | $ (12,180.00) | |
| Hamilton Books/Family Video/FullMoon Direct | $ (525.00) | |
| | | $ (22,380.00) |
| Revenue: | | |
| RedBox | $ 66,500.00 | |
| Less Discount @ | $ (3,500.00) | |
| SQS | $ 15,600.00 | |
| Hamilton Books | $ 300.00 | |
| Full Moon Direct | $ 734.00 | |
| Total Revenue: | | $ 79,634.00 |
| Net Profits/(Deficit) | | $ (14,857.00) |

* Costs limited to DVD replication, packaging, and shipping

EXHIBIT "21"

**KILLER EYE 2**
Royalty Statement

Statement #2
For Period ending: 11/15/12

| | | |
|---|---|---|
| Production Costs | $ (72,111.00) | |
| | | $ (72,111.00) |
| | | |
| Distribution Costs* | | |
| RedBox | $ (9,675.00) | |
| SQS | $ (12,180.00) | |
| Hamilton Books/Family Video/FullMoon Direct | $ (525.00) | |
| | | $ (22,380.00) |
| | | |
| Revenue this Statement Period: | | |
| RedBox | $ - | |
| Less Discount | $ - | |
| SQS | $ - | |
| Hamilton Books | $ - | |
| Full Moon Direct | $ 170.00 | |
| Total Revenue, this period: | | $ 170.00 |
| | | |
| Revenue prior periods: | | |
| RedBox | $ 66,500.00 | |
| Less Discount | $ (3,500.00) | |
| SQS | $ 15,600.00 | |
| Hamilton Books | $ 300.00 | |
| Full Moon Direct | $ 734.00 | |
| | | |
| Total Revenue: | | $ 79,634.00 |
| | | |
| Net Profits/(Deficit) | | $ (14,687.00) |

* Costs limited to DVD replication, packaging, and shipping

EXHIBIT "22"

03/07/2013  13:58    51                                              PAGE  16/49

**DEAD WANT WOMEN**
Royalty Statement

Statement #1
For Period ending:  8/15/12

| | | |
|---|---|---|
| Production Costs | $ 105,493.00 | |
| | | $ (105,493.00) |
| Distribution Costs* | | |
| RedBox | $ (17,006.00) | |
| SQS | $ (12,180.00) | |
| Hamilton Books/Family Video/FullMoon Direct | $  (1,980.00) | |
| | | $  (31,166.00) |
| Revenue: | | |
| RedBox | $ 140,000.00 | |
| Less Discount @ | $  (7,000.00) | |
| SQS | $  15,600.00 | |
| Hamilton Books | $    300.00 | |
| Family Video | $  4,675.00 | |
| Full Moon Direct | $  2,490.00 | |
| Total Revenue: | | $ 156,065.00 |
| Net Profits/(Deficit) | | $  19,406.00 |

*  Costs limited to DVD replication, packaging, and shipping

EXHIBIT "23"

**DEAD WANT WOMEN**
Royalty Statement

Statement #2
For Period ending:  11/15/12

| | | |
|---|---|---|
| Production Costs | $ 105,493.00 | |
| | | $ (105,493.00) |
| | | |
| Distribution Costs | | |
| RedBox | $ (17,006.00) | |
| SQS | $ (12,180.00) | |
| Hamilton Books/Family Video/FullMoon Direct | $ (1,980.00) | |
| | | $ (31,166.00) |
| | | |
| Revenue this Statement Period: | | |
| RedBox | $ — | |
| Less Discount @ 5% | $ — | |
| SQS | $ — | |
| Hamilton Books | $ — | |
| Family Video | $ — | |
| Full Moon Direct | $ 310.00 | |
| Total Revenue, this period: | | $ 310.00 |
| | | |
| Revenue, prior periods: | | |
| RedBox | $ 140,000.00 | |
| Less Discount @ 5% | $ (7,000.00) | |
| SQS | $ 15,600.00 | |
| Hamilton Books | $ 300.00 | |
| Family Video | $ 4,675.00 | |
| Full Moon Direct | $ 2,490.00 | |
| Total Revenue, prior periods: | | $ 156,065.00 |
| | | |
| Net Profits/(Deficit) | | $ 19,716.00 |

**EXHIBIT "24"**

**PUPPET MASTER X: Axis Rising**
Royalty Statement

Statement #1
For Period ending: 12-31-12

| | | | |
|---|---|---:|---:|
| Production Costs | $ | 207,054.00 | |
| | | | $ (207,054.00) |
| | | | |
| Distribution Costs* | | | |
| RedBox | $ | - | |
| Hamilton Books/Blockbuster/ FullMoon Direct | $ | (7,397.00) | |
| | | | $ (7,397.00) |
| | | | |
| Revenue: | | | |
| RedBox | $ | - | |
| Less Discount @ 5% | $ | - | |
| Hamilton Books | $ | 300.00 | |
| Blockbuster | $ | 7,200.00 | |
| Full Moon Direct | $ | 7,675.00 | |
| Total Revenue: | | $ | 15,175.00 |
| | | | |
| Net Revenue | | | |
| Revenue less Distribution Cost: | | $ | 7,778.00 |
| | | | |
| Net Profits/(Deficit) | | | $ (199,276.00) |

| | | |
|---|---|---:|
| Investor's Contribution to Production: | $ | 200,000.00 |
| Principal Repayment: | | |
| 50% of Net Revenue: | $ | 3,889.00 |
| Paid to Date: | $ | - |
| Due Today: | $ | 3,889.00 |
| | | |
| Investor's Share of Net Profits: | | |
| Investor's Percentage: 30% | | |
| Net Profits hereunder: | $ | (199,276.00) |
| Paid to Date: | $ | - |
| Due Today: | $ | - |

EXHIBIT "25"

**ZOMBIES vs STRIPPERS**
Royalty Statement

Statement #1
Period:  Qtr end, 12-31-12

| | | |
|---|---|---|
| Production Costs | $ 94,000.00 | |
| | | $   (94,000.00) |
| | | |
| Distribution Costs* | | |
| RedBox | $ (18,311.00) | |
| Hamilton Books/FullMoon Direct | $ (1,785.00) | |
| | | $ ·   (20,096.00) |
| | | |
| Revenue: | | |
| RedBox | $ 120,000.00 | |
| Less Discount @ 5% | $   (6,000.00) | |
| Hamilton Books | $      600.00 | |
| Full Moon Direct | $   2,800.00 | |
| Total Revenue: | | $   117,400.00 |
| | | |
| Net Profits/(Deficit) | | $     3,304.00 |

Investor's Share of Net Profits:
    Investor's Percentage:  30%

| | | |
|---|---|---|
| Net Profits hereunder: | $ | 991.20 |
| Paid to Date: | $ | |
| Due Today: | $ | 991.20 |

\*   Costs limited to DVD replication, packaging, and shipping

EXHIBIT "26"

Subj:       **Fwd: hey charlie john from ny**
Date:       12/17/2013 8:33:20 P.M. Eastern Standard Time
From:       Devlinmayham@aol.com
To:         devlinmayham@aol.com

john a hackert

From: Devlinmayham@aol.com
To: cband@fullmoonfeatures.com
Sent: 12/21/2012 11:39:58 A.M. Eastern Standard Time
Subj: Re: hey charlie john from ny

have safe nice trip to italy? merrry xmas see you in jan.
In a message dated 12/20/2012 8:01:10 P.M. Eastern Standard Time, cband@fullmoonfeatures.com
writes:

Hi John
With all due respect I am on
my way out of town and have no more time left to do anything until we meet on the 16th.
As you know I'm even sharing your costs to come out here in the spirit of our unique
relationship. I cannot confirm anything at this exact moment except that I will have a payment
for you on the 16th and we'll spend time sorting out our affairs. Once you better understand
how things work in our business I am sure you'll be more at ease.
I'm back in my office early January - I have the 16th set aside for our meeting
Best
CB

Sent from my Charlie Band's iPhone

On Dec 20, 2012, at 3:51 PM, Devlinmayham@aol.com wrote:

can you pleaase con firm 15 and 16th of jan you pick up hotel acrossfrom
burbank calf, i leave on jan 17th.     m y reason is i want wed jan 16th to go
smoooth take our time also i like any material we go  over in writing please.
ALso i like if you can con firm  i get a 1099 form and a k1 form for taxes plus
con firm i have my 50 thousand dolllars in a check and then accounting
statements for 3%, 30% and 50%and check for each. thank you  and take care
john ps i loook for ward to west .ps we ever going to lunch or simple dinner ?
doe sneed to be fancytake care charlie
In a message dated 12/19/2012 3:07:30 P.M. Eastern Standard Time,
cband@fullmoonfeatures.com writes:

Hi John

Just opened your email

Since we're meeting in a few short weeks it doesn't make any sense
my sending you a long written response to your many
questions/assumptions since the point of our meeting is for you to
better understand how things function at a low budget

Subj:   **Fwd: hey charlie john from ny**
Date:   12/17/2013 8:33:20 P.M. Eastern Standard Time
From:   Devlinmayham@aol.com
To:     devlinmayham@aol.com


john a hackert


From: Devlinmayham@aol.com
To: cband@fullmoonfeatures.com
Sent: 12/21/2012 11:39:58 A.M. Eastern Standard Time
Subj: Re: hey charlie john from ny

have safe nice trip to italy? merrry xmas see you in jan.
In a message dated 12/20/2012 8:01:10 P.M. Eastern Standard Time, cband@fullmoonfeatures.com
writes:

Hi John
With all due respect I am on
my way out of town and have no more time left to do anything until we meet on the 16th.
As you know I'm even sharing your costs to come out here in the spirit of our unique
relationship. I cannot confirm anything at this exact moment except that I will have a payment
for you on the 16th and we'll spend time sorting out our affairs. Once you better understand
how things work in our business I am sure you'll be more at ease.
I'm back in my office early January - I have the 16th set aside for our meeting
Best
CB

Sent from my Charlie Band's iPhone

On Dec 20, 2012, at 3:51 PM, Devlinmayham@aol.com wrote:

can you pleaase con firm 15 and 16th of jan you pick up hotel acrossfrom
burbank calf, i leave on jan 17th.    m y reason is i want wed jan 16th to go
smoooth take our time also i like any material we go  over in writing please.
ALso i like if you can con firm  i get a 1099 form and a k1 form for taxes plus
con firm i have my 50 thousand dolllars in a check and then accounting
statements for 3%, 30% and 50%and check for each. thank you  and take care
john ps i loook for ward to west .ps we ever going to lunch or simple dinner ?
doe sneed to be fancytake care charlie
In a message dated 12/19/2012 3:07:30 P.M. Eastern Standard Time,
cband@fullmoonfeatures.com writes:

Hi John

Just opened your email

Since we're meeting in a few short weeks it doesn't make any sense
my sending you a long written response to your many
questions/assumptions since the point of our meeting is for you to
better understand how things function at a low budget



Page 2 of 3

production/distribution company.

The recent projects you refer to have been funded by loans to me and Full Moon as our cash flow is still not sufficient to keep new productions flowing thru our various channels. And if we can't release a minimum number of films per year our opportunities will dry up and we'll no longer be able to self-distribute our features.

I expect some decent collections the early part of January and will have a payment waiting for you when we meet on the 16th.

Please keep the faith and relax for these next few weeks – I look forward to our meeting which I'm sure will be a good and productive one.

Best,

CB

**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Tuesday, December 18, 2012 3:32 PM
**To:** cband@fullmoonfeatures.com
**Subject:** hey charlie john from ny

thanks for the chat yesterday. Charlie i have to be blunt the way business handled you got me real nervous so iam going to ask you as act of faith can you send me a bank check in amount of 25,000 dolllars by Friday  dec. 21st, 2012as a act of good will and faith.See loook at it from my point of view everyone from alll 4 of my law firm told me i was nuts.They pointed out many thing for example you said and ry said you pay me in jan and feb. There point made is if he don't have the money in dec how does he have it in jan. Bottom line is i should have to ask for this money that is owed to me or ask for statements every 90 days. MR BAND YOU SAID YOU DONT HAVE THE MONEY BUT YOU BEEEN ABLE TO DO killjoy goes to hell,full moon holiday cards, fullmoon catalogue, reel evil,grindhouse movie collection and grindhouse app, itunes grindhouse flix site as well as Ooga Booga and finallly your giving a trip away for grind house .Charlie all do respect takes money lots of it you can do alll this and have ry say jan and feb you telll you cant pay me in nov or dec and you told me in the agree ment you pay me out of your own personal acccount if you couldn't cover the principle , welll it more then 10, 000 dolllars. Listen iam sorrry iwas loooking for way that money me the acccounting statement as welll as my cut in zombies vs strisppers , puppetmasterX axis rising , killler eye and dead want women.C harlie first staement was offf in figures and alll the source of money wasn't shown .Bottom line iam asking you please would you sent

Wednesday, December 18, 2013 AOL: Devlin mayham

a check for 10 or 25 thousand act of goood faith sorrry if your up set but iam the one that is upset and truth this trip iwant come out there but iwant to be boook for jan 15th and jan 16 2 nights at hotel acrosss from the burbank airport i leave thurs the 17th of jan iam sorry but truth i beeen hearing and reading a lot of details and the truth it don't tak2 12 to 18 months before you seee money from dvd its 21 to 120 day with 90 day revenue grosss recipts and a statement from the distr. which is fulll mooon or wizard plus warner brother in there as welll as another but most of it is you guys . SO if you can not get up set i hope you can do something as act of faith and be willl ing to be on the level with everything cash advance deals alll of it only related to the deals i have with you. FINALLY I NEED A 10999 FORM AND  k1 form , also my acccount might request a document for the irs .Charlie iam sorry but try to be in my shoes partner don't let them wait or do what is happpened here you just do do that is business. take care john ps act of goood willl would show me that everything is on the level iam sorry if it comes out the wrong way but i get the feeeling a bad feeeling, take care and i do hope we can make movies in near future eat coast partner and i hope friend john hackert thank you

EXHIBIT "27"

**Subj:**     **Fwd: hello mr charles band from mr john anthony hackert from east coast**
**Date:**     12/17/2013 8:14:18 P.M. Eastern Standard Time
**From:**     Devlinmayham@aol.com
**To:**       devlinmayham@aol.com


john a hackert

---

From: Devlinmayham@aol.com
To: cband@fullmoonfeatures.com
Sent: 12/4/2012 1:59:12 P.M. Eastern Standard Time
Subj: Re: hello mr charles band from mr john anthony hackert from east coast

helllo thankyou and i hope we can and i really do look forward to future. take care john ps it seeems our personal lives have a lot going on i hope alll is goood

In a message dated 12/3/2012 1:47:42 P.M. Eastern Standard Time, cband@fullmoonfeatures.com writes:

Hi John – sorry if it took a while to respond but I have been super buried here at Full Moon and extra challenged in my personal life.

All of your concerns can be easily addressed starting this Thursday on our 10:00am phone meeting. Quarterly statements from entertainment companies almost all look the same(and contain the same information) and John Schouweiler - who helps us prepare ours - is a 30 year veteran of this business. Please just have your questions ready so we can address each one. There is no need to fly out here as nothing more would be accomplished in person. Let's save your next trip for when we're shooting or doing another project together.

Best,

CB

**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Sunday, December 02, 2012 10:34 PM
**To:** cband@fullmoonfeatures.com
**Subject:** Fwd: hello mr charles band from mr john anthony hackert from east coast

Tuesday, December 17, 2013 AOL: Devlin mayham

**EXHIBIT "28"**

| Subj: | **RE: busy man** |
|---|---|
| Date: | 5/8/2013 7:19:28 P.M. Eastern Daylight Time |
| From: | cband@fullmoonfeatures.com |
| To: | Devlinmayham@aol.com |

John – I'm barely in the office

We will have the accountings done/update by EOM

We can schedule a talk the early part of the week of May 20th

thanks


**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Wednesday, May 08, 2013 4:08 PM
**To:** cband@fullmoonfeatures.com
**Subject:** busy man


tried 3 times to talk all 3 times busy lets talk on may 13th @ 1:00 my time 10:00 your time
john a hackert

EXHIBIT "29"

| | |
|---|---|
| Subj: | **RE: dec19th 2013 2nd** |
| Date: | 12/20/2013 12:36:46 P.M. Eastern Standard Time |
| From: | cband@fullmoonfeatures.com |
| To: | Devlinmayham@aol.com |
| CC: | ry@fullmoonfeatures.com |

John - I feel like the conversation we just had yesterday never happened.

I explained in detail that *there are no books and records* (as we haven't had an accountant for years) and that I am having someone come in after the 1st who will put it all together by the end of January at which time I wills send you reports for the films. You will also see that we are hundreds of thousands of dollars in the red with zero hope of ever breaking even.

I cannot continue to have conversations with you that I think are helpful and genuine and then a day later get an email like the one below.

Once we have sent you the accountings at the end of January if you feel you need to have someone come in and review our records then we can set that up.

In the meantime **please communicate only with Ry**. As I've said to you over the last several months I am fighting for the very survival of Full Moon as the business model we've worked with for years has crashed and burned. The world is transitioning from physical goods to digital and only a few of us will survive. I need to keep as positive as possible to be one of those survivors.


**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Thursday, December 19, 2013 7:43 PM
**To:** cband@fullmoonfeatures.com
**Subject:** dec19th 2013 2nd

 Hello charles, thank you for offering to have an account look at things .However, considering the course last several years, i like to have  accountant  of my own choosing review all book s and all  records regarding full dis closure of all business dealings in regards to the 5 films . So please let meknow the location of the businesses' all books and all records to 5 films, what format they are kept in, and how much there is to review{my accountant wants to know)                                                                              thank you john hackert

**EXHIBIT "30"**

Subj:      **Fwd: hey aug 27th 2013**
Date:      12/17/2013 10:24:17 P.M. Eastern Standard Time
From:      Devlinmayham@aol.com
To:        devlinmayham@aol.com

john a hackert

From: Devlinmayham@aol.com
To: ry@fullmoonfeatures.com
Sent: 8/27/2013 11:01:45 P.M. Eastern Standard Time
Subj: Re: hey aug 27th 2013

thank you better nothing

In a message dated 8/27/2013 8:28:12 P.M. Eastern Daylight Time, ry@fullmoonfeatures.com writes:

> I spoke to Charles about all this. I understand why all this is so upsetting. The best we can do
> right now is sending a $1000 cashiers check to you on Friday August 30th. I'll send you the
> tracking number Friday afternoon. I'm sorry for all the upset.

**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Tuesday, August 27, 2013 3:54 PM
**To:** ry@fullmoonfeatures.com
**Subject:** hey aug 27th 2013

hello hey been thinking  about all this and seems i am getting the short end of the stick. First
off 2 weeks ago you tell me you guys didn't get paid but been able to go to conventions . 2nd
you tell me next week  then this week cause of a convention go bad its funny how this all has
to do with me being paid . truth it doesn't sorry for what it worth what happen but i dont buy it
any more.you gentle every week keep coming up with accuses not to pay me . KNOW YOU
LOOKING FOR PEOPLE TO WORK YOU CONVENTIONS IN NEW YORK NY CHICAGO IL,
ORLANDO FL, DETROIT MI, ATLANTA GA PROVIDENCE
RI ,PARSIPPANYNJ,PITTSBURGH, PA MINNEAPOLIS MN,TEMPLE AND
PHOENIX ,AZ ,BOSTON AND WORCHESTER ,MA, MEMPHIS AND NASHVILLE ,TN
BALTIMORE AND HUNTVALLEY MD,COLUMBUS,STRONGSVILLE AND
CLEVELAND,OH , AUSTIN, DALLAS, SAN ANTONIO AND MCALLEN, TX WITH 30% OF
SALES WHICH IS CASH AND CREDIT CARD . rY   I ASKED FOR WRITTEN DOCUMENTS
NOTHING ASKED FOR CONFIRMATION IN SEPT NOTHING ASKED FOR
CONFIRMATION FROM YOU ON THIS $2000 EVERY 2 WEEKS FOR MONTH JULY AUG
AND SEPT. I KNOW YOU GUYS HAVE MONEY BUT IT APPEARS YOU GUYS DO EVERY
THING FROM ME GETTING IT. So sept comes what see what happens i believe it when i
see it and as for Friday i want a check on Friday for $4000.00 . cause what you going to do in
sept? CHARLIE HAS MONEY SO WHY DONT YOU GUYS ALL STOP THE GAMES AND
THIS I DONT DESERVE TO BE TREATED LIKE THIS.  TRY TELLING THE TRUTH STOP
MAKING EXCUSES AND LIEING , YOU CAN DO EVERTHING ELSE BUT YOU CANT PAY
ME COME ON. FOR THE RECORD I GOING TO BE CONTACTING SOME PEOPLE ON

Thursday, December 19, 2013 AOL: Devlin mayham

EXHIBIT "31"

Subj:    **Fwd: hey**
Date:    12/17/2013 10:22:07 P.M. Eastern Standard Time
From:    Devlinmayham@aol.com
To:      devlinmayham@aol.com

john a hackert

From: Devlinmayham@aol.com
To: ry@fullmoonfeatures.com
Sent: 8/16/2013 10:39:34 A.M. Eastern Standard Time
Subj: Re: hey

i hope good news. thank you

In a message dated 8/15/2013 4:18:36 P.M. Eastern Daylight Time, ry@fullmoonfeatures.com writes:

I just got word that we may not have the funds to send out the check until early next week. I know the check was supposed to be sent on Wednesday the 14th. We're doing our best. Charlie has spent half his time this week trying to collect money from those that owe us. Please allow a delay of a few business days for checks to clear. I'll have a more solid answer tomorrow morning.

**From:** Devlinmayham@aol.com [mailto:Devlinmayham@aol.com]
**Sent:** Thursday, August 15, 2013 12:32 PM
**To:** ry@fullmoonfeatures.com
**Subject:** hey

ry is there going be issues with anything ? check should be here no later then friday., but in truth it should of been here on aug 15 th its every 14 days. ok thank you

EXHIBIT "32"

EJ-195

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*<br>Alan M. Mirman, Esq. (SBN 66883)<br>MIRMAN, BUBMAN & NAHMIAS, LLP<br>21860 Burbank Boulevard, Suite 360<br>Woodland Hills, California  91367 | TELEPHONE NO.:<br>(818) 451-4600 | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR *(Name)*: **Plaintiff, Hollywood & Vine Development Company** | | |

NAME OF COURT: LOS ANGELES COUNTY SUPERIOR COURT
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: Los Angeles, California 90012
CITY AND ZIP CODE:
BRANCH NAME: Central District, Stanley Mosk Courthouse

PLAINTIFF: HOLLYWOOD & VINE DEVELOPMENT COMPANY

DEFENDANT: AMAZING FANTASY ENTERTAINMENT, INC., etc., et al.

| NOTICE OF RENEWAL OF JUDGMENT | CASE NUMBER:<br>BC242458 |
|---|---|

TO JUDGMENT DEBTOR *(name)*:
AMAZING FANTASY ENTERTAINMENT, INC., a California corporation, dba RED PLANET, dba FULL MOON TOYS, dba BIG CITY RECORDS and dba TANA2000

FULL MOON UNIVERSE, INC. a California corporation, fka ISURRENDER.COM

CHARLES BAND, an individual

ALBERT BAND, an individual

1. This renewal extends the period of enforceability of the judgment until 10 years from the date the application for renewal was filed.

2. If you object to this renewal, you may make a motion to vacate or modify the renewal with this court.

3. You must make this motion within 30 days after service of this notice on you.

4. A copy of the *Application for and Renewal of Judgment* is attached *(Cal. Rules of Court, rule 3.1900).*

JOHN A. CLARKE, CLERK

Date:        JAN 2 0 2012

Clerk, by _J. A. Cook_ , Deputy

J. A. COOK



[SEAL]

See CCP 683.160 for information on method of service

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
EJ-195 [Rev. January 1, 2007]

**NOTICE OF RENEWAL OF JUDGMENT**

Code of Civil Procedure,  § 683.160
www.courtinfo.ca.gov

www.accesslaw.com

EXHIBIT "33"



1  Donald A. Barton, Esq. 105402
   LAW OFFICES OF DONALD A. BARTON
2  10100 Santa Monica Blvd., Suite 800
   Los Angeles, California  90067-4100
3  (310) 282-0553

4  Attorneys for Plaintiffs

**FILED**
LOS ANGELES SUPERIOR COURT

MAR 27 2001

JOHN A CLARKE, CLERK

BY M.J FOLLINGS, DEPUTY

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              FOR THE COUNTY OF LOS ANGELES

11  JAMES R. MODER MOTION PICTURE)
    DISTRIBUTION,  INC.;  MODER-)
12  GORDIAN ENTERTAINMENT, INC. )    Case No. BC 232808
                                 )
13                               )
                                 )
14        Plaintiffs,            )    JUDGMENT
                                 )    Pursuant  to  Stipulation  for
15     vs.                       )    Entry of Judgment
                                 )
16  CHARLES  BAND,  an individual;)
    FULL MOON UNIVERSE; FULL MOON)
    STUDIOS; FULL MOON MPC, INC.;)
17  FULL MOON PICTURES; ALBERT BAND)
    ENTERPRISES,  INC.;  TANNA)
18  PRODUCTIONS,  INC.;  AMAZING)
    FANTASY ENTERTAINMENT, INC.; RED)
19  PLANET, INC.; SURRENDER CINEMA,)
    INC.; FULL MOON TOYS, INC.; and)
20  DOES 1-100,                  )
                                 )
21        Defendants.            )
                                 )
22  _____)

23
        IN  THE  ABOVE-ENTITLED  MATTER,  Plaintiffs,  jointly  and
24  severally, and Defendants, jointly and severally, having stipulated
25  and agreed that Judgment be entered as set forth in the Stipulation
26  for Entry of Judgment on file herein:
27      IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:
28      1. Plaintiffs have judgment against Defendants CHARLES BAND;

                           1
                                              JUDGMENT

1  FULL MOON UNIVERSE; FULL MOON STUDIOS; FULL MOON MPC, INC.; FULL
2  MOON PICTURES; ALBERT BAND ENTERPRISES, INC.; TANNA PRODUCTIONS,
3  INC.; AMAZING FANTASY ENTERTAINMENT, INC.; RED PLANET, INC.;
4  SURRENDER CINEMA, INC.; FULL MOON TOYS, INC., jointly and
5  severally, (collectively referred to herein as "Defendant") in the
6  principal sum of $115,871.00, reasonable attorneys fees and costs
7  in the amount of $2,273.00, interest to the date hereof in the
8  amount of $16,896.40, and Defendant appearance fees are hereby
9  waived/charged by the Court to Plaintiffs, ~~in the amount of~~
10 $_____.
        The total amount of judgment entered is $135,040.40 .
11
12
13     2. Further, said Defendants, jointly and severally, shall pay
14 all fees and costs incurred for collection of this Judgment,
15 including reasonable attorneys fees, and interest at the rate of
16 10% per annum on the judgment from the date ~~hereof equal to $~~_____
17 ~~per day~~.
18
19     3. Writs of Execution on said judgment shall immediately
20 issue.
21
22 Dated: 3/27/01
                          _Susan Bryant-Deason_
                          JUDGE OF THE SUPERIOR COURT
23
24
25
26
27
28   Writ LA                        2                    JUDGMENT