# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HACKERT, | Case No. CV 14-8814 FMO (JPRx) |
| Plaintiff, | **ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| CHARLES BAND, et al., | |
| Defendants. | |

Having reviewed and considered plaintiff's Ex Parte Application for Temporary Restraining Orders: 1) Freezing Assets; 2) Requiring Accountings; Order to Show Cause re Preliminary Injunction; and Order Allowing Expedited Discovery ("Application"), the court concludes that oral argument is not necessary to resolve the Application. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## BACKGROUND

Plaintiff John Hackert ("plaintiff" or "Hackert") filed this action on November 13, 2014, against Charles Band ("Band") and Full Moon Holdings, d/b/a/ Full Moon Holdings, Inc., d/b/a Full Moon Features; Full Moon Holdings Corp., d/b/a Full Moon Features, d/b/a California Full Moon Holdings, Inc., d/b/a/ Full Moon Holdings, Inc.[1]; and Does 1 through 10, (collectively,

---

[1] The Complaint is less than precise regarding the identification of the defendants and their distinctive roles. The court has identified the defendants based on the case caption, and for purposes of this Application, the court will refer to the Full Moon-related defendants as ("FMH"), unless otherwise indicated.

1 "defendants"), asserting claims for: (1) breach of contract; (2) money had and received; (3) fraud;
2 (4) conversion; and (5) fraudulent conveyance. (See Complaint at ¶¶ 29-108).

3      Defendants are in the business of producing low-budget, horror films. (See Declaration of
4 John Hackert ("Hackert Decl.") at ¶ 3). Plaintiff alleges that in 2006, he loaned a small amount of
5 money to Band for the production of Band's movie, "Petrified[.]" (See Complaint at ¶ 2). Over the
6 next five years, plaintiff made five additional loans to Band for the production of seven films. (See
7 id.).

8      On November 14, 2011, plaintiff and FMH entered into a contract whereby plaintiff agreed
9 to loan FMH $50,000 for the production of a film entitled, "Zombies v. Strippers." (See Hackert
10 Decl. at ¶ 16 & Exhibit ("Exh.") 11 (Investment Agreement 'Zombies vs. Strippers') ("November
11 2011 Agreement"); Complaint at ¶ 3). Pursuant to the November 2011 Agreement, FMH promised
12 to pay plaintiff 50% of the film's net revenue until the principal amount was repaid, and then with
13 30% of the film's net revenue for 10 years. (See Hackert Decl. at ¶ 17 & November 2011
14 Agreement). In addition to the contract between plaintiff and FMH, Band personally guaranteed
15 the loan's principal and promised to return plaintiff's principal by December 17, 2012. (See
16 Hackert Decl. at ¶ 18 & Exh. 12). Plaintiff states that he "made the second of two transfers totaling
17 $50,000 to FMH" by December 17, 2011, (see Hackert Decl. at ¶ 19), but that he does "not have
18 bank statements showing the transfers of funds from [his] account to the account owned by
19 FMH[.]" (Id.). Plaintiff, however, states that he has "information regarding Defendants' routing and
20 account numbers, which were given to [him] so that [he] could transfer the referenced funds."[2] (Id.
21 & Exh. 13). Plaintiff received $21,000 as repayment of the loan. (See id. at ¶ 20).

22      On May 3, 2012, plaintiff entered into another agreement with FMH pursuant to which
23 plaintiff was to loan FMH $200,000 for the production of a film entitled "Puppet Master 10."
24 (Hackert Decl. at ¶ 21 & Exh. 15 (Investment Agreement 'Puppet Master 10: Axis Rising') ("May
25 2012 Agreement")). FMH agreed to pay plaintiff 50% of the film's net revenue until the principal

---

[2] On November 21, 2014, plaintiff submitted a declaration from his mother reflecting payments made from her account to FMH. (See Declaration of Sheila J. Hackert).

2

amount was repaid, and then 50% of the film's net revenue for 10 years. (See Hackert Decl. at ¶ 21). As with the prior loan, Band personally guaranteed the loan's principal and promised to return plaintiff's principal by December 4, 2013. (See id. at ¶ 22 & Exh. 16). By June 4, 2012, plaintiff had transferred $200,000 to FMH. (See Hackert Decl. at ¶ 23). He has not been repaid. (See id.). Plaintiff's numerous attempts to collect the outstanding loan amount and promised returns from Band and FMH have been unsuccessful. (See id. at ¶¶ 24, 32 & Exhs. 17-19). At times, Band promised to send some form of payment to plaintiff, but did not. (See id. at ¶ 32 & Exhs. 30-31).

Plaintiff's requests to audit FMH's books and records have also been denied. (See Hackert Decl. at ¶ 25; November 2011 Agreement; May 2012 Agreement). Moreover, on May 8, 2013, Band told plaintiff that they "will have the accountings done/update [sic] by EOM[,]" (Hackert Decl. at ¶ 29 & Exh. 28), but in December 2013, Band stated that "there are no books and records (as we haven't had an accountant for years)[.]" (Hackert Decl. at ¶ 30 & Exh. 29). Plaintiff states that the "statements" defendants gave him "are not detailed financial statements, and do not list sources of money for production costs or how [his] money was used." (Id. at ¶ 26 & Exhs. 20-25). This is so despite Band's representation in December 2012 that an individual with 30 years experience in the "business" helped defendants prepare their quarterly statements. (See id. at ¶ 28 & Exh. 27).

In June 2014, Band confirmed that he was "personally responsible for the monies [plaintiff] put into the[] productions and will in time find ways to pay [him] back." (Hackert Decl. at ¶ 19 & Exh. 14 (June 10, 2014, Letter). Band, however, did not indicate how much was owed, and referenced five films in which plaintiff invested. (See June 10, 2014, Letter).

On November 13, 2014, plaintiff filed the instant Complaint and Application, seeking an order (1) "freezing Defendants' assets[;]" (2) "requiring the accountings of Defendants[;]" and (3) allowing expedited discovery, as well as an order to show cause why a preliminary injunction

should not issue. (See Application at 3). Relying on Federal Rule of Civil Procedure[3] 65(b) and Local Rules 7-19, 7-19.2, and 65-1, plaintiff did not provide notice to defendants or their counsel of the Application. (See id.).

## LEGAL STANDARD

Rule 65 provides courts with the authority to issue temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(a) & (b). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 376 (2008). The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held. See Wahoo Intern., Inc. v. Phix Doctor, Inc., 2014 WL 2106482, *2 (S.D. Cal. 2014).

The standards for a temporary restraining order and a preliminary injunction are the same. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); Rowe v. Naiman, 2014 WL 1686521, *2 (C.D. Cal. 2014) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 1867 (1997) (emphasis in original and citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20, 129 S.Ct. at 374; Garcia v. Google, Inc., 743 F.3d 1258, 1262 (9th Cir. 2014).

The moving party bears the burden of meeting all prongs of the Winter test. See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011); DISH Network Corp. v. FCC,

---

[3] Unless otherwise indicated, all further "Rule" references are to the Federal Rules of Civil Procedure.

653 F.3d 771, 776 (9th Cir. 2011), cert. denied 132 S.Ct. 1162 (2012) ("To warrant a preliminary injunction, [plaintiff] must demonstrate that it meets all four of the elements of the preliminary injunction test established in Winter[.]"). The decision of whether to grant or deny a preliminary injunction is a matter of the district court's equitable discretion. See Winter, 555 U.S. at 32, 129 S.Ct. at 381.

Rule 65(b) further provides that a court may issue a temporary restraining order without notice to the adverse party or its counsel only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The Ninth Circuit has noted that there are "very few circumstances justifying the issuance of an ex parte TRO." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). And "[i]In cases where notice could have been given to the adverse party, courts have recognized a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." Id. (internal quotation marks omitted).

## DISCUSSION

I.    NOTICE.

Plaintiff asserts that he did not provide notice to defendants or their counsel "because of the risk that Plaintiff's funds will be dissipated[,]"[4] (Application at 3), and "Defendants' ongoing attempts to keep information from Plaintiff . . . warrant the issuance of a TRO without notice."[5] (Memorandum of Points and Authorities Supporting Plaintiff's Emergency Ex Parte Application re

---

[4] While plaintiff refers to his funds being dissipated, there is no evidence that defendants are in possession of specific funds, such as trust funds, to which plaintiff is entitled. Rather, plaintiff appears more concerned that defendants may become judgment proof by hiding funds or continuing to burn through funds – from whatever source – in their possession.

[5] The court notes that plaintiff provides the former reason only in its Application and the latter reason in its Memo. P&As. Out of an abundance of caution, the court considers both reasons.

T.R.O., O.S.C re Preliminary Injunction, Etc. ("Memo. P&As") at 4). The Application does not cite to any evidence supporting it contention that plaintiff's funds will be dissipated, (see, generally, Application at 3), while the Memo. P&As cites to plaintiff's declaration. (See Memo. P&As at 4).

Hackert's Declaration, however, does not clearly show that immediate and irreparable loss or damage will result before defendants can be heard in opposition. See Fed. R. Civ. P. 65(b)(1)(A). Instead, plaintiff speculates that because defendants have not repaid the loans, given him the "run-around" regarding such repayment, and have refused to allow plaintiff to inspect the books, which may or may not exist, (see Hackert Decl. at ¶¶ 24-32), defendants will, upon learning of the Application, "secret assets and destroy evidence." (Id. at ¶¶ 28 & 31). Absent from Hackert's Declaration is specific evidence that would allow the court to conclude that, if defendants were provided notice, defendants would "dissipate" plaintiff's funds, "secret assets," or destroy evidence "render[ing] fruitless the further prosecution of the action." See Reno Air, 452 F.3d at 1131 (internal quotation marks omitted). Nor is there a showing that defendants would have disregarded a direct court order and disposed of funds within the time it would take for a hearing, by, for instance, submitting evidence that defendants have a history of disposing of evidence or violating court orders. See id. at 1131. Moreover, the court notes that plaintiff's contentions rest on the merits of his claims, which may not support an ex parte temporary restraining order. See Emerging Vision, Inc. v. Glachman, 2010 WL 3293346, *5 (S.D. Fl. 2010) ("A plaintiff . . . cannot obtain an ex parte restraining order by merely pointing to the merits of its claims.") (internal quotation marks omitted).

II. TEMPORARY RESTRAINING ORDER.

Even assuming plaintiff had satisfied the requirements to seek a TRO without giving notice to defendants, the court would nonetheless deny the requested relief. "Winter tells us that plaintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction." Cottrell, 632 F.3d at 1135; see Winter, 555 U.S. at 20, 129 S.Ct. at 374. Moreover, the Ninth Circuit has cautioned that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. v. Baldridge, 844 F.2d 668, 674 (9th Cir.1988). As a general rule, a plaintiff seeking

6

injunctive relief must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate" for the injury. Herb Reed Enters., LLC v. Fla. Entm't Mgmt., 736 F.3d 1239, 1249 (9th Cir. 2013), cert. denied, 135 S.Ct. 57 (2014) (internal quotation marks omitted).

Plaintiff contends that he will suffer irreparable injury absent a temporary restraining order because Band could dissipate the $250,000 owed to plaintiff, and if he does so, "Plaintiff will have nothing for which to satisfy his judgment against Defendants." (Memo P&As at 9). Under the circumstances, the court is not persuaded that plaintiff has demonstrated a likelihood that absent preliminary relief, he will be irreparably harmed.[6] At noted above, at most, plaintiff speculates that defendants will dissipate funds and destroy evidence. See Caribbean Marine Servs., 844 F.2d at 674 ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); Herb Reed, 736 F.3d at 1250 (concluding "district court abused its discretion by relying on unsupported and conclusory statements regarding harm [plaintiff] might suffer.") (internal quotation marks omitted). While it is possible that defendants may attempt to make themselves judgment-proof by some means, that is insufficient to support granting a temporary restraining order.[7] See Winter, 555 U.S. at 22; 129 S.Ct. at 375 (The mere "possibility of irreparable harm" is insufficient). Moreover, according to plaintiff's own contentions, defendants have already spent the funds plaintiff loaned them. (See, e.g., Hackert Decl. at ¶¶ 31 ("I have reason to believe the money is gone") & 33 (stating that defendants' conduct "tells me that Band and FMH do not have the funds with which to pay me back")). If so, it is unclear what funds plaintiff urges this court to "freeze." In short, plaintiff has failed to "clearly show" that he is likely

---

[6] Notwithstanding the fact that it is plaintiff's burden to establish that he is likely to suffer irreparable harm if preliminary injunctive relief is not granted, plaintiff devoted only a single paragraph (four sentences) to the irreparable harm factor, and failed to cite any cases or other authority related to this factor. (See, generally, Memo P&As at 9).

[7] A contrary finding would appear to make temporary restraining orders and preliminary injunctions routine in civil actions where a plaintiff fears a defendant may be unable to pay a judgment. Such remedies would no longer be extraordinary.

to suffer irreparable harm absent a temporary restraining order.[8]

III. EXPEDITED DISCOVERY.

Plaintiff next seeks an order permitting expedited discovery – discovery prior to the Rule 26(f) conference. (See Application at 3). For the reasons articulated above, the court does not find such an order is warranted. However, pursuant to its Standing Order, "[t]he court allows discovery to commence as soon as the first answer or motion to dismiss is filed." (Standing Order at § III(A)). Accordingly, any delay conducting discovery will be minimal.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT Plaintiff's Ex Parte Application for Temporary Restraining Orders: 1) Freezing Assets; 2) Requiring Accountings; Order to Show Cause re Preliminary Injunction; and Order Allowing Expedited Discovery **(Document No. 5)** is **denied**.

Dated this 1st day of December, 2014.

/s/
Fernando M. Olguin
United States District Judge

---

[8] "Because [plaintiff] has failed to carry its burden of showing a likelihood of irreparable harm, [the court] need not address the remaining factors necessary for injunctive relief." Amylin Pharm., Inc. v. Eli Lilly and Co., 456 F.App'x 676, 679 (9th Cir. 2011); see also ConocoPhillips v. Gonzalez, 2012 WL 538266, *3 (N.D. Cal. 2012) (addressing only irreparable injury prong "[g]iven that Plaintiff fails to 'clearly show' that it is likely to suffer immediate and irreparable harm absent a TRO")